SMITH, RESPONDENT, *v.* FERGUS COUNTY, APPELLANT.

(No. 7,291.)

(Submitted December 5, 1934. Decided December 28, 1934.)

[39 Pac. (2d) 193.]

*Mr. E. K. Cheadle* and *Mr. C. E. Baker,* for Appellant, submitted a brief; *Mr. Cheadle* argued the cause orally.

*Mr. George E. Hurd,* for Respondent, submitted a brief and argued the cause orally.

380

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In the spring of 1931, Fergus county obtained a tax deed to a large tract of land then in the possession of one V. W. Scarda as a tenant. The county commissioners labored under the belief that, on receipt of a tax deed, the county was entitled to immediate possession of any lands described in the deed, regardless of the occupancy thereof. They were willing to lease a part of the land to Scarda, but thought he was holding more land than he could handle.

On April 14, 1931, the county, acting through its board of county commissioners, in regular session entered into a contract in writing by which it demised, leased and let to this plaintiff, Ivan G. Smith, approximately 1,300 acres of the land described in the above-mentioned tax deed, "for a term beginning on the 14th day of April, 1931, and ending on the first day of March, 1933." The lease contains no defeasance clause other than that the lessee will immediately surrender possession in the event the land is sold by the county; it binds the lessee to cultivate the land in good and farmerlike manner "during the term of the lease," and to sow 150 acres to barley, 150 acres to wheat, and summer-fallow the balance of the cultivated land during the season of 1931, and to deliver to the lessor one-third of all grain and one-half of all hay raised on the land during the term of the lease.

The lease was delivered to Smith, who demanded possession from Scarda. Scarda refused to yield possession, claiming that he was entitled to hold for the full season of 1931. The county brought action in the justice court to oust Scarda, but the judgment went in favor of the latter.

In March, 1933, the full term having expired, Smith presented to the county an itemized claim for damages, which claim was disallowed, and he then commenced action alleging breach of the contract, by which he was damaged in the following particulars: For trips to the county seat and ex-

penses incurred, $61; loss of time, $72; paid to attorneys, $20, these in attempting to get possession; repairing and preparing farm machinery for working the land, $168.75; net anticipated profit for the term, $7,710.83.

The county answered the complaint, denying the breach of the contract and the allegations as to damages, and setting up three special defenses: First, the county alleges that the premises "were lawfully held and occupied by one V. W. Scarda, who claimed the right to possession for the year 1931 under certain agreements between him and the said defendant"; that the plaintiff was fully informed and had full knowledge of the facts, and accepted the lease with the express agreement that it should not take effect until and unless the defendant was able to, and did, terminate the tenancy of, and dispossess, Scarda; that, as the county was unable to oust Scarda, the lease "never became operative and became null and void." Second, that all crops on the land were destroyed by hail in 1931, and that, although the land was worked in a skilful and husbandlike manner in 1932, no profits accrued, rather, the tenant sustained a loss; and, through circumstances over which defendant had no control, plaintiff could have derived no profit from the premises during the term of the lease. Third, that there was an abundance of farming land available for use in the vicinity in the seasons of 1931 and 1932 and plaintiff might have secured other lands, of equal extent, fertility and value, without difficulty, but that he failed and neglected to lease such other lands or to employ his time profitably, and therefore the defendant is not answerable to him in any amount of damages.

The plaintiff demurred to each of these special defenses; the court sustained the demurrer as to the second defense, but overruled it as to the first and third. The plaintiff filed a reply in which he denied specifically each allegation of new matter contained in the first and third special defenses.

The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $1,000; judgment for that amount and costs followed. No motion for

a new trial was made. The defendant has appealed from the judgment.

Defendant's specifications 1, 2, and 4 predicate error upon the admission of testimony in support of plaintiff's allegations of special damages by way of money and time expended in seeking to obtain possession of the premises after delivery of the lease to him.

The first contention is that "attorneys' fees" are not recoverable as damages. It is true that, in the absence of contractual stipulation therefor or statutory allowance thereof, attorneys' fees are not allowable in the action in which they are incurred. (*In re Baxter's Estate*, 94 Mont. 257, 22 Pac. (2d) 182; *State ex rel. Snidow* v. *State Board of Equalization*, 93 Mont. 19, 17 Pac. (2d) 68; *Federal Surety Co.* v. *Basin Construction Co.*, 91 Mont. 114, 5 Pac. (2d) 775; *Dunlavey* v. *Doggett*, 38 Mont. 204, 99 Pac. 436.) This rule precludes recovery of attorneys' fees paid in an action for breach of contract, as a part of the damages for the breach. (*Stapley Co.* v. *Rogers*, 25 Ariz. 308, 216 Pac. 1072; *Boob* v. *Hall*, 107 Cal. 160, 40 Pac. 117.) However, the small amount here claimed is not for attorneys' fees in the sense in which that term is used in the above rule; it is but an amount paid out, incidentally to attorneys, in plaintiff's attempt to get possession of the land covered by his contract, and, under a proper showing that such payment is an element of compensatory damages, is to be treated as one of the legal consequences of the original wrongful act. (*Weinhagen* v. *Hayes*, 179 Wis. 62, 190 N. W. 1002; *First Nat. Bank* v. *Williams*, 62 Kan. 431, 63 Pac. 744; *Lawrence* v. *Fielder*, 186 Ky. 324, 216 S. W. 1068; *Smith* v. *Bolles*, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279.)

The measure of damages for the breach of contract is, ordinarily, "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Sec. 8667, Rev. Codes 1921.) Under this rule the plaintiff was entitled to show the value of time lost

and the expenditure of money in seeking to get possession of
the premises and in preparation to farm the land. (*Murdock*
v. *Roe,* 186 Mich. 233, 152 N. W. 969; *Douglass* v. *Guardian
Holding Corp.,* 132 Cal. App. 585, 23 Pac. (2d) 80; *United
States* v. *Behan,* 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168;
*Lawrence* v. *Fielder,* above.)

The court did not err in admitting the testimony with re-
spect to the loss of time and money, including the amount
paid to attorneys, in his efforts to secure possession of the
land.

The third specification predicates error on the admission of
 testimony, over objection, as to the cost of repairing
farm machinery in anticipation of its use on the land. The
objection to this line of testimony should have been sustained.
The expense incurred would have been a proper item of dam-
ages, had the plaintiff not sought to recover the net profits
anticipated from prospective farming operations; but, as such
profits constitute his chief claim against the defendant, all
expenditures made, or necessary, for the preparation of the
ground, the seeding, cultivating and harvesting the crops, must
be deducted from the gross yield in order to determine the
"net" profits which might reasonably be anticipated. Had
the plaintiff secured possession of the land and successfully
carried on farming operations thereon for the term of his
lease, the item here claimed would necessarily have to be de-
ducted from the amount received for his grain in determining
his profits.

In support of his claim for damages for the loss of pros-
 pective profits, the plaintiff testified that he had known
these lands and had had experience in farming in the vicinity
for twenty years. He based his estimate as to the probable
yield in each of the years 1931 and 1932 on known conditions
existing and the productivity and yield of this land, and other
like lands in the vicinity, both before and during the period
covered by the lease. He detailed the cost of production of the
several prospective crops, and estimated the probable total
yield on the basis of the acreage the lease required him to cul-

tivate. Incidentally it may be noted that plaintiff's estimate of the net contemplated profit from alfalfa land and pasturage alone exceeds the amount of the verdict.

Error is predicated on the court's refusal to strike plaintiff's testimony, outlined above, on the ground that reasonable expectancy from past experience alone is admissible, and it is argued that testimony as to "what happened in the years 1931 and 1932 was inadmissible."

The succinct rule on this subject is that "profits which are a mere matter of speculation cannot be made the basis of recovery in suits for breach of contract, while profits which are reasonably certain may be." (*Anvil Min. Co.* v. *Humble,* 153 U. S. 540, 14 Sup. Ct. 876, 879, 38 L. Ed. 814.) As to the latter, "it may be reasonably presumed that they were within the intent and mutual understanding of both parties" at the time they entered into the contract. (*Cincinnati Co.* v. *Western Co.,* 152 U. S. 200, 14 Sup. Ct. 523, 38 L. Ed. 411.) This rule is recognized in this state (*Carlson* v. *Stone-Ordean-Wells Co.,* 40 Mont. 434, 107 Pac. 419; *Blaustein* v. *Pincus,* 47 Mont. 202, 131 Pac. 1064, Ann. Cas. 1915C, 405), and is applicable in such a case as this (*Pressler* v. *Warren,* 57 Tex. Civ. App. 635, 122 S. W. 909; *Stewart* v. *Murphy,* 95 Kan. 421, 148 Pac. 609, Ann. Cas. 1917C, 612).

Prospective profits from farming operations may be ascertained with a reasonable degree of certainty, and, when the evidence furnishes sufficient data to determine the value of the prospective crops, they constitute a proper element of damages for breach of contract of lease, and evidence of the actual matured value of other crops of a like kind, cultivated during the same period, in the same vicinity, and under substantially similar conditions, is admissible to prove such profits. (*Malone* v. *Hastings,* 193 Fed. 1, 113 C. C. A. 329, affirmed (C. C. A.) 201 Fed. 1020.) The court did not err in refusing to strike the testimony to which reference is made.

The next specification is that the court erred in striking out the testimony of one Jack Smith, produced in support of defendant's third affirmative defense. Smith attempted to

qualify for testifying respecting other lands which plaintiff might have leased by stating that he had, since the spring of 1929, been employed by the county in taking tax deeds, posting notices, and investigating real estate generally, and that his work took him over considerable of the county. He was then permitted to testify over the objection that no sufficient foundation had been laid. His testimony was short, and amounted to no more than the two statements: "I think there were lands open to lease * * * in the neighborhood of this leased land," and "the lands which I have mentioned as open to lease are similar in character and productivity to the lands embraced in the lease." In sustaining the motion to strike the testimony, the court stated that the witness "has not shown any lands, whether possible to secure it," and "it is just an opinion of his." The above testimony was lacking in many essentials necessary to establish defendant's third affirmative defense, and the court did not err in striking it.

The final contention is that the court erred in instructing the jury that, if they believed that the lease was entered into with the mutual agreement and understanding that it should not take effect unless and until Scarda should relinquish, or could be compelled to relinquish, possession, their verdict should be for the defendant "in so far as the year 1931 is concerned, but you are instructed that this instruction has no application to the year 1932." On settlement of the instructions, objection was interposed to this instruction because of the restriction placed upon it by the quoted portion; it being asserted that the lease constituted an indivisible contract, and Scarda's relinquishment constituted a condition precedent to its operation upon the failure of which the delivery of the lease became inoperative.

Taken by its four corners and considered in its entirety, the lease constitutes an indivisible contract for the occupation of the premises for a single term "beginning on the 14th day of April, 1931, and ending on the first day of March, 1933." The terms of the lease called for possession during 1931 if crops were to be raised in 1932, for it required the lessee to summerfallow the cultivated land not cropped in 1931, and, as a basis

for recovery as to 1932 crops, the plaintiff testified that, had he had possession in 1931, he would have summer-fallowed 600 acres of the 900 acres of tillable land; after putting in 300 acres of grain, and would have raised thereon, in 1932, 100 acres of barley and 500 acres of winter wheat. This wheat would have been planted in the fall of 1931. There is no intimation in the record that the plaintiff attempted to secure, through the commissioners or otherwise, or desired, possession of the lands for the season of 1932, after Scarda's tenancy terminated by operation of law:

Whether a contract is entire or severable depends largely upon the intention of the parties (13 C. J. 562, and cases cited) ; here it is clear that the parties intended indivisibility. If, as defendant alleged and contended, the lease was delivered conditionally, to be used as a lever to oust Scarda, and to be ineffective if possession of the lands could not be secured, the postponement of its effective date would be but for the reasonable time to be consumed in determining whether or not Scarda would relinquish, or could be compelled to relinquish, possession.

Under the instruction as given, the jury could have credited all of the defendant's testimony respecting its third affirmative defense as outlined in the instruction, and still have rendered a verdict for the full amount awarded as damages suffered in the year 1932,—a situation clearly not contemplated by either party to the contract. The court erred in confining the effect of the instruction to the year 1931, and emphasizing this restriction by stating that the instruction "has no application to the year 1932." If applicable at all, the instruction was applicable to the full, single, term of the lease.

The plaintiff has made a cross-assignment of error to the effect that the court erred in admitting testimony tending to prove the oral agreement and understanding, and now contends that, if error was committed in giving the above instruction, it was compensated by the error in admitting the testimony to which the instruction referred.

The contract itself is clear, certain and unambiguous, and required no oral testimony for its interpretation; it is complete, and deals directly with all essential matters, except immediate possession and quiet enjoyment.

The "American rule" is that the only implied covenant is ▉ that the lessee shall have the legal right to possession at the beginning of the term—that is, that the possession shall not be withheld by the lessor himself or by one having a paramount title—but that there is no implied covenant to put the lessee in possession against an intruder. The "English rule," followed in a minority of the states, holds that the lessor impliedly covenants that the premises shall be open, both legally and actually, to the lessee at the beginning of the term. (See note, 70 A. L. R. 151.) It would seem that the plaintiff was entitled to possession of the leased premises at the beginning of the specified term under either of these rules, unless oral testimony to the contrary was admissible and established defendant's position in this regard.

The fact that the instant lease does not mention possession may be significant. The plaintiff did not deny that he knew that Scarda was in possession of the premises as a tenant, not an intruder, but did deny that the parties had any agreement or conversation respecting Scarda's rights, and it is reasonably clear that the county commissioners believed that a tax deed gave the holder the right to immediate possession, and so informed Smith. If this be so, and if the agreement contended for by the defendant was made, all parties would have been of the opinion that possession could be secured within a reasonable time after the execution of the lease.

The execution of such an instrument "supersedes all the ▉ oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument" (sec. 7520, Rev. Codes 1921), and, in the absence of fraud, misrepresentation, or mistake, ambiguity, and the like, "there can be * * * no evidence of the terms of the agreement other than the contents of the writing, except * * * where the validity of the agreement is the fact in dispute" (sec. 10517, Id.).

These provisions of our law preclude oral testimony of agreements which contradict, change, add to, or subtract from a written contract purporting to embrace all of its terms. The cases in point are too numerous, and the rule is too well established, to require citation of authorities. However, under the statutory exception noted, "where the validity of the agreement is the fact in dispute," parol evidence is admissible, not to vary the terms of the instrument, but to show that what appears on its face as a valid, binding contract is, in fact, no such thing. Thus a written instrument for delivery of grain was properly shown by parol testimony to be merely an office memorandum to complete plaintiff's office files, and not to hold the defendant liable for the delivery of grain (*McCaull-Dinsmore Co.* v. *Stevens,* 59 Mont. 206, 194 Pac. 213); and, where a bank merely acted as a "go-between" for a wool buyer and its customers, it was permitted to prove the facts as against an apparently binding contract for delivery (*Bridges & Co.* v. *Bank of Fergus County,* 77 Mont. 524, 251 Pac. 1057). In the latter case this court said that "the rule regards the circumstances of the parties and executes their real intention, and prevents either of the parties to the instrument from committing a fraud on the other by claiming it to be what it, in fact, is not. In other words, the real transaction may be proved," citing substantial authority for the statement. There are authorities to the contrary, but this is the just and equitable rule.

If the facts and circumstances surrounding the instrument in question show that it was executed and delivered to Smith to be used merely as a lever in attempting to oust Scarda, and it was then and there distinctly understood and agreed that it should serve no other purpose "unless or until" Scarda relinquished, or was forced to relinquish, possession of the premises, as defendant contends, and if, as would seem to appear from the record, all attempts to get Scarda off of the place during the period contemplated by the parties, failed, justice demands that the defendant be permitted to so show.

The judgment is reversed and the cause remanded to the district court of Fergus county for a new trial.

Mr. Chief Justice Callaway and Associate Justices Angstman, Stewart and Anderson concur.