258

In re MICKICH'S ESTATE.
TUSS et al., Appellants, v. TUSS, ADMINISTRATOR,
et al., Respondents.
(No. 8315.)
(Submitted November 17, 1942. Decided March 5, 1943.)
[136 Pac. (2d) 223.]

*Messrs. Emmett C. Angland, W. J. Tighe* and *E. J. Stromnes,* for Appellants, submitted a brief; *Mr. Angland* and *Mr. Stromnes* argued the cause orally.

264

*Mr. H. R. Eickemeyer* and *Mr. H. Leonard DeKalb,* for Respondents, submitted a brief; *Mr. DeKalb* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from the judgment entered in a will contest tried with a jury. There were two grounds of contest, first, that the deceased, because of weakened mental condition resulting from illness, was not competent to make the will, and, second, that he was unduly influenced by others to make the will.

The case was submitted to the jury on two special interrogatories. In answer to the first the jury found the testator mentally incompetent to make the will, which made unnecessary any consideration of the second as to undue influence. The court adopted the jury's verdict and entered judgment thereon, denying probate of the will. Proponents of the will moved for a new trial on the ground of insufficiency of the evidence to support the verdict, error in the trial of the case, and newly discovered evidence. The motion was denied. The appeal is from the judgment.

The illness from which Mickich was suffering at the time the will was made commenced as a throat ailment on May 13, 1941, a bad case of tonsillitis developing rapidly into streptococcus infection which spread into the blood stream and became general throughout his system. He was taken to the Columbus Hospital at Great Falls where he was under the care of doctors and nurses until the time of his death which occurred on May 27th. The will was made at the hospital on May 20th. There was no question of the seriousness of his condition from the time he was taken ill until his death, with pain and suffering and physical weakness resulting therefrom. Also there seems to have been no question but that his mental faculties were progressively weakened in the course of the illness. The question was as to what extent his mental capacity had been lowered, and whether, at the time he signed the will, his mental condition was such that he knew and understood what he was doing and was able to give thought to and make determination as to the disposition of his estate.

The instrument which was offered to probate has every appearance of regularity as a duly executed will. It bears the name of the testator as if regularly subscribed and has a full and complete attestation clause, signed by three witnesses— Mr. Tighe, the attorney who drew the will, and two nurses at the hospital where the will was made, Virginia Walker and Maxine Nisson. The will disposes of the whole estate, giving two-thirds thereof to Steve Mickich, a cousin of the second degree, and the remaining one-third divided equally between Mrs. Antonich, Walter Tuss and August Tuss, none of whom were related to the testator.

Mickich was a bachelor, fifty-three years old, of foreign birth, a Croatian, and had been in this country since about the time he was of age. At the time of his last illness and death he owned and operated a beer parlor at Black Eagle, near Great Falls. His estate was estimated by witnesses as of the value of approximately $30,000. He had only distant relatives and none of those in close association with him excepting Steve Mickich,

of Anaconda. Upon first coming to Montana in 1915, Steve had befriended him when in circumstances of need and a close, friendly relationship had continued between them. Steve is the principal beneficiary named in the will. The other beneficiaries were close friends, August Tuss being an acquaintance of his boyhood days, and Walter Tuss, a son of August. Mrs. Antonich was the wife of a close acquaintance. The contestants are surviving nieces and nephews of the half blood who would take as heirs at law.

The principal witnesses for the contestants were Mrs. Virginia Walker, a nurse who attended the deceased throughout his last illness, and Dr. Irwin, the attending physician. They both testified that Mickich was a very sick man when he came to the hospital; that his illness progressed rapidly into more serious stages, with progressive weakening of both mind and body; and that at the time the will was made, on May 20th, he was overcome by illness to such extent as to be utterly helpless physically, with his mental faculties and sensibilities dulled to such extent that it was impossible to get any intelligent response to conversation or questions spoken to him. Several other witnesses testified to seeing Mickich on the day the will was made, and on days immediately preceding and following; that he was very sick and unable or not inclined to carry on conversation, and that they were unable to get any response on matters they undertook to discuss with him.

For the proponents of the will several witnesses testified to seeing Mickich on the day the will was made, and said he was very sick and did not talk much, was slow to respond when spoken to but did respond intelligently. Mr. Tighe, the attorney who drew the will and attended to its execution, said that he talked with Mickich immediately before the will was drawn; that Mickich then said that he wanted to make a will. Questioned as to the disposition he wished made of the estate, he first mentioned Steve Mickich, saying that he lived in Anaconda. Asked whether he wanted it all to go to Steve, he mentioned Frank Antonich and changed that to Frank Antonich's wife.

Asked whether he wanted it all to go to them, he then mentioned Gus and Walter, and explained he meant August Tuss and his son Walter. When asked as to the division to be made, he said he wanted two-thirds to go to his cousin, Steve Mickich, and the rest of it to go to Mrs. Antonich and to the two Tusses in equal proportions. He said he wanted to name August Tuss as executor to serve without bond. Mr. Tighe said he had not known Mickich until he came to the hospital to prepare the will; that he had never had anything to do with his affairs until the interview then at the hospital.

Mrs. Walker, the nurse, was present when the will was made, and testifying for the contestants, she related what took place as follows: She said that Mr. Tighe, the attorney, came to the hospital about 7 in the evening on May 20th to see about making a will. After a half hour in the room with Mickich he called her in to assist, saying he could get no satisfactory response. She tried to talk with Mickich about the will but could get no expression from him. Unable to get any statement from him she and Mr. Tighe then suggested to him those to whom he might leave his property. His response to each such suggestion was ''I guess so''; she stated that the will as made was in accordance with suggestions from them, and the only assent of Mickich thereto was ''I guess so.'' She said that at no time in her hearing did Mickich say he wanted to make a will or how he wanted to dispose of any of his estate. She said that after the will was prepared, the portions thereof disposing of the property were read aloud to Mickich. It was laid before Mickich and with her assistance, guiding his hand, he wrote his name thereon without saying anything. Mrs. Nisson, another nurse, was then called in to act as a witness. There was difficulty in getting any request from Mickich that they witness the will. August Tuss was called in to assist. He told Mickich he must ask the witnesses to sign, that he must say ''Yes'' and he said ''Yes.'' The three of them—Mr. Tighe, Mrs. Walker and Mrs. Nisson—then signed as witnesses.

Both Mrs. Walker and Mrs. Nisson testified that neither of them read the attestation clause, nor was it read to them.

The case so presented left a clear question of fact for determination. The evidence on either side, if taken alone, was amply sufficient to sustain the contention it was sought to uphold. The witnesses were all positive in their statements and testified directly as to facts material to the case. The evidence on each side was substantial, with a direct conflict in its bearing on the question at issue.

In their attack on the contestants' case as made, appellants contend that neither the testimony of Dr. Irwin nor that of Mrs. Walker is entitled to full credence, leaving contestants with no substantial evidence to support the verdict and judgment. They contend, on the other hand, that the testimony of Mr. Tighe, the attorney, is entitled to more than ordinary weight, and, supported by other witnesses, it gave the proponents substantial proof of their contentions as against the lack of any substantial proof on behalf of the contestants. On that basis they specify error in the adoption of the verdict and the entry of judgment thereon. We see no merit in this contention.

As to the testimony of Dr. Irwin appellants say that he did not qualify as an expert on mental disorder and that he was evasive of the question of the mental competency of the testator. We think Dr. Irwin was peculiarly well qualified to testify as to the mental competency of the deceased. In addition to his personal knowledge of the case, it was shown that he had had forty-five years of experience in the practice of medicine and surgery; and that in such general practice he had had experience with many patients who were mentally deranged and mentally weakened by disease. As to the character of his testimony, it was full and direct and to the point. If believed, it could have but one effect, i. e., to convince the jury of the mental incompetency of Mickich when the will was made.

As to the testimony of Mrs. Walker, the fact that she had signed the attestation clause as a witness to the will is

pointed out as bearing against the truth of her oral testimony. She testified that she did not read the attestation clause nor was it read to her nor in her presence before she signed, nor at any time thereafter until the matter came into litigation. Under those circumstances her signing the attestation clause should not discredit her testimony as to what actually took place. Furthermore, she was entirely disinterested and no reason was shown why she would be prone to falsify.

It is urged that the testimony of Mr. Tighe, the attorney, is entitled to special consideration and should be given more weight than that of the ordinary witness, because of his years of experience in the legal profession and his high standing as an attorney of good repute. Counsel say that the verdict and judgment, if permitted to stand, will cast reflection on his good name. Mr. Tighe's reputation and standing were not questioned, nor was it at issue. He had been called in to draw a will and see to its execution. That he did in a professional manner and as best could be under the circumstances. He performed his function as a lawyer, not as an expert on mental disorder. What the result thereof would be if the mental competency of the testator should be questioned was not his responsibility. Where his testimony is in conflict with that of other witnesses it was for the jury to determine whom to believe. On the question of mental competency, apparently they believed the doctor as against the lawyer. The testimony of Mr. Tighe is entitled to high credence, but it was for the jury to determine its weight and value.

Upon the evidence presented it was for the jury to reach their conclusion in answer to the question submitted by the special interrogatory. Their determination thereon was subject to review by the trial court. If it was manifestly against the weight of the evidence, the verdict should have been set aside. However, it was addressed to the sound discretion of that court, and if there is any support therefor found in the evidence, its determination thereon should not be disturbed on appeal. Here there was ample evidence to sustain the verdict and there can be

no ground for disturbing the ruling as made by the trial judge. There was no error in the entry of judgment on the verdict.

Appellants contend that there was error in the presentation of evidence which resulted in prejudice to their case. They set out two specifications of such error, first, in permitting Dr. Irwin to testify over objection in answer to a hypothetical question as to the mental competency of Mickich when the will was made; and, second, in excluding an exhibit offered in the examination of a witness testifying for the proponents of the will. We see no error prejudicial to the appellants under either of these specifications.

As to the testimony of Dr. Irwin on the mental competency of the deceased, the contention is made that the opinion called for would be an invasion of the province of the jury, attempting to substitute the opinion of the medical expert for the conclusion to be reached by the jury as to mental competency to make a will—the ultimate fact to be determined. We think there was ample foundation made in the record of the case showing Dr. Irwin to be peculiarly qualified to give his opinion as he did in answer to the question as it was propounded. He was the attending physician and had treated the patient from the time he was taken ill and until his death. He saw him on his round of calls at the hospital several times a day, including the day the will was made. He had testified as to the patient's condition, the seriousness of his illness and its effect on his mental condition. He had testified that on the 20th, "the man's mental condition was just out." He had, without objection, given his opinion, based on his treatment of the man and his observation of him from day to day, that when the will was made he did not have the mental competence to understand the transaction of making a will. He was then asked the following question: "Now, then, Doctor, would you consider, under the circumstances related—the testimony—that this man was qualified and competent to make a will, knowing his history as it is known?" The objection to the question was that in giving the opinion as called for, the doctor "would have to take into con-

sideration the legal requirements of competency to make a will. The objection is not to the type of hypothetical question. It is to the question which requires that—this includes more than an opinion of the doctor in regard to his profession. It requires that he have knowledge of the legal requirements of a will." The objection was overruled and the doctor made the following answer: "I might state that I consider that Mr. Mickich was wholly incompetent at that time and had been since Sunday, and continued so until his death. That is about the only answer I can make to that." There was no objection made as to the answer given. It is clear that the opinion which the doctor expressed was based rather on his own knowledge of the condition of the man than upon the facts referred to in the hypothetical question. On cross-examination the doctor was taken over the same ground. He was asked the question, "Do you think he was wholly incompetent?" Answer: "From Sunday—Sunday evening he had a chill and high fever, and from that time on every time I visited him, he was wholly mentally incompetent." Further on cross-examination the doctor was questioned at great length regarding the case, the condition of the patient from the time the doctor was called to attend him and until the patient's death, the care and treatment given, the condition of the patient in the progressive stages of the development of the disease. There was extended cross-examination on the chart record of the case as showing the condition of the patient. Nothing different was developed by such cross-examination. It only tended to amplify the testimony given by the doctor on direct examination, showing more clearly the serious condition of the man and the weakened condition of his mental faculties.

The testimony of the doctor in answer to the question as put was clearly admissible. In no way was the province of the jury thereby invaded. He stated that he considered that "Mr. Mickich was wholly incompetent mentally at that time, and had been since Sunday, and continued so until his death." That was a fact conclusion arrived at from his knowledge of the case. It was for the jury to determine therefrom and from

the other evidence in the case whether the man was mentally competent to make a will. The doctor clearly avoided by his answer the giving of his opinion as to whether the man was competent to make a will. True, his statement that the man was wholly mentally incompetent, would lead to that conclusion, but it was not the conclusion. He stated to the jury what to him was a known fact, but whether the man was competent to make a will was nevertheless for the jury to determine under the instructions from the court.

The other specification of error relates to the offer of an ▮ exhibit in the examination of a witness, August Tuss, who was testifying in regard to a visit to the deceased at the hospital. He had called to see him about some business at the bank. He had with him on this visit a writing which had on that same day been prepared at the bank and which was dated as of the same day, May 24th. There was question as to the particular day the visit was made, and in testifying he produced the writing and referred to it to refresh his memory, and then testified as to the particular day on which the visit occurred. The writing was then offered in evidence. There was objection on the ground that it was incompetent, irrelevant and immaterial, and the objection was sustained. The exhibit had served its purpose. The transaction to which it related was not involved. Its introduction in evidence would have added nothing material to the case, and there was no error in its exclusion.

Error is specified on the giving of instructions to the jury. We have considered fully the questions raised thereby and find no ground for reversal therein. The instructions given adequately explained to the jury the question presented to them for determination and correctly stated the rules of law they must observe in considering the evidence and arriving at their verdict.

In instructing on mental competence the jury was told that ▮ ▮ the testator must have an ''intelligent understanding of the disposition he desired to make of it [his property] and of the persons he desires shall receive his property, and the capacity

to recollect and apprehend the nature of the claims of those who are excluded from participating in his bounty.'' Then, following that, the jury were told more specifically that ''if the jury find, from all the evidence in this case that at the time the will in question was made, the testator had sufficient mental capacity to understand what he was about when he made it and to remember and appreciate the property he had for disposal and his relations toward the objects of his bounty, so as to judge for himself what he wished to do in the disposal of his property, this is sufficient mental capacity to enable him to make a valid will whether at the time his general health was good or not.''

The instruction so given on mental competence is criticized by appellants as placing undue emphasis upon the consideration to be given by a testator to the objects of his bounty, leading the jury to believe that the contestants, relatives of testator, had some special claim thereon which must not be overlooked and which it was wrong to ignore. It is contended that the appellants were prejudiced thereby and it is urged as ground for reversal. On this point the appellants specify further error in the refusal of the court to instruct the jury specifically that ''an uncle is under no obligation to provide for his nephews or nieces, either when living or by will, and failure to name them, or any of them in the will, does not, under the law, raise the presumption that they were forgotten.'' Instead of the instruction so offered the court gave the following statement of the law, of general application: ''Under the laws of Montana one is under no legal obligation to leave his estate at his death to his heirs or other kin and the fact that a will omits mention of relatives, it may nonetheless be valid and entitled to probate.''

We see no merit in either of these points of error specified. It was proper to call the jury's attention to the matters that should be of concern to a testator in disposing of his property by will. Beneficiaries must be named and the objects of his bounty are always a matter that the testator must give . consideration to. The exclusion of lawful heirs may properly be considered as an indication of lack of recollection, showing

incompetence to make a will. Under the facts in this case, showing none but distant relatives, and none of those omitted having been of close association with the testator, it was not a matter of serious importance. However, we do not believe the point was unduly stressed, especially in view of the instruction that "a will which omits mention of relatives * * * may nonetheless be valid and entitled to probate."

Appellants offered an instruction upon the effect to be given ▮▮▮▮▮▮▮ to a complete attestation clause as giving rise to a presumption that the will has been duly executed. The instruction offered was as follows: "The attestation clause which appears upon the will of the deceased in this case raises a presumption that the will has been duly executed."

The effect which may be given to an attestation clause is discussed in a comparatively recent decision of this court, in *In re Bragg's Estate*, 106 Mont. 132, 76 Pac. (2d) 57, 62. The court therein said that it has "evidentiary value" in the absence of proof as to what transpired in the execution of the will, as where the attesting witnesses cannot be produced, and further, that it "raises a presumption of the due execution of a will if there is no contest as to the genuineness of the signatures of the witnesses, or that of the testator, or after these signatures are proved to be genuine." In the instant case there was proof as to what transpired, and the due execution of the will was vigorously contested on the ground that the testator was not mentally competent to form any intent in connection with the act as done.

Our statute, (sec. 6980, Rev. Codes) requires that the will be subscribed by the testator. That requirement means more than that the name shall be written. It must be written with the intent of the testator that the instrument to which it is appended shall be his will and that his name so written shall be his own record of such intent. If such intent be absent, by writing his name thereon he does not subscribe the will within the meaning of the statute. To form such intent the testator must have the necessary mental competency therefor. If he is

lacking in that respect, no intent can be formed, and the will then will not have been executed by him.

In the instant case the whole question was of the mental competency of the testator to make the will. If he was incompetent, he did not execute the will even though he wrote his name thereon, giving the appearance of it being subscribed by him. The appearance of regularity of execution in the instrument itself would be of no avail.

Presumptions are relied upon when there are no facts upon which a conclusion may be reached. When facts appear, satisfactory as evidence, presumptions may not then be used as a basis of conclusion. Here we have the facts of what occurred about the execution of the will, including the testimony of the three attesting witnesses. From these facts, which are the probative facts, and from the facts alone, the ultimate fact as to the due execution must be determined. Presumption can play no part in that.

It is for the court to say whether the proof offered upon a certain point is satisfactory as evidence thereon. Here the court in refusing the instruction offered must have determined that the proof produced was satisfactory as evidence, and held the jury to make its determination thereon unaided by presumption. There was ample evidence to sustain the court therein. And with the further instruction that the burden of proof was upon contestants, the proponents of the will were amply protected. There was no error in the refusal of the instruction offered.

The motion for a new trial was properly denied. As to error in the trial and insufficiency of the evidence, upon our view of the case as already stated, there is no basis therein for a new trial.

As to newly discovered evidence, which was urged as additional ground, there was no sufficient showing. There was lack of diligence, the exercise of which should have made the evidence available at the trial. Also the evidence proposed would all be cumulative. The testimony of the one witness

would be to show intelligent response by the testator in following directions as to breathing in the taking of an X-ray picture of him the day the will was made. The testimony of the other proposed witness would be to show statements made to the witness by testator prior to his illness indicating his feeling of consideration for the welfare of those named as beneficiaries in his will and a feeling of obligation to them, especially Steve Mickich as to whom he had expressed the thought he would want him to have his business at Black Eagle if he were gone. All these conversations took place months before, the most recent one being at least a month before the illness. In its showing of close, friendly relations it was all cumulative, and as to expression of his will with respect to the disposition of his estate, it was too indefinite and too remote to have any value as evidence.

The case having been regularly tried, and finding no error in any of the proceedings therein, the judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Erickson and Morris concur.

On Motion for Rehearing.

MR. JUSTICE ANDERSON delivered the opinion of the court.

By their petition for rehearing appellants ask that the ▮▮▮ opinion as already rendered be modified so as not to impose costs against them, and to allow their costs and attorneys' fees on appeal as a charge against the estate. Respondents have filed objection that such provision for payment of costs and attorneys' fees is not justified by the facts and the law controlling.

Nothing was said about the matter by either side in the presentation of the appeal, and without any order of the court appellants would be subject to payment of respondents costs. However, it is matter for consideration by the court, and is properly before us by the petition as filed.

278

The contest was defended in good faith. The will had every appearance of regularity, both in its dispositional provisions and its execution. The only question was whether it represented the free will of the testator made while his mental faculties were competent to form the intent necessary thereto. The question arose regularly in the proceeding for probate and the litigation thereof was necessary to a correct determination of the distribution of the estate. There were law questions of sufficient importance, and with some uncertainty therein, so it cannot be said but that the appeal from the adverse judgment in the court below was prosecuted in good faith.

There is no specific provision by statute for allowance of costs, nor of attorneys' fees, to an unsuccessful proponent of a will, where the contest arises in the proceeding for its admission to probate. Section 10047, Revised Codes, provides for such allowance of costs out of the property of the decedent, in the discretion of the court, in a contest of a will after its admission to probate. Had the Mickich will been admitted to probate, and the contest had thereafter arisen, allowance of costs to the contestee would then have been proper under·section 10047, as was done in In re Carroll's Estate, 59 Mont. 403, 196 Pac. 996. However, there is general provision in section 10372, Revised Codes, for allowance of costs in proceedings in probate, covering cases for which there is no specific provision therefor. That section provides that ''when it is not otherwise prescribed in sections 10018 to 10464, the district court, or supreme court on appeal, may, in its discretion, order costs to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require. * * *'' The proceeding here is such as is provided for in the Probate Code and included within the sections referred to in section 10372. The costs in question, therefore, may, in the discretion of the court, be allowed out of the assets of the estate. (In re Bielenberg's Estate, 86 Mont. 521, 284 Pac. 546.)

As to attorney's fees, there is no express provision by statute for allowance thereof in a proceeding such as this. It was done

in the *Bielenberg Case*. Attorneys' fees to the unsuccessful proponents of the will, for services rendered in the prosecution of the appeal, were allowed as costs payable from the assets of the estate. The Bielenberg decision is commented on in the later case of *In re Baxter's Estate,* 94 Mont. 257, 22 Pac. (2d) 182, the court saying that the propriety of such allowance as part of the costs was really not therein decided, not having been squarely put before the court. In the proceeding below such an allowance had been made, on agreement of the parties, for services of proponents' attorneys therein rendered, and in the proceedings on appeal the matter was presented in such a way as to give the impression that counsel would be content with the appellate court following the agreed disposition of the matter in the court below as a just disposition of the question in its relation to the proceeding on appeal. At least that is the view expressed in the *Baxter Case.*

In the case of *In re Hauge's Estate,* 92 Mont. 36, 9 Pac. (2d) 1065, also referred to in the *Baxter Case* as not decisive of the question, attorneys' fees were allowed an unsuccessful litigant in a proceeding to determine the qualifications of the beneficiary named in the will to take as a beneficiary. The court, in its opinion, bases the allowance on section 10372. The proceeding in that case was under Chapter 139 for the Code of Civil Procedure, which provides for special proceedings to determine heirship. (Secs. 10324, 10325 and 10326, Rev. Codes.) We find therein provision for the cost of such proceeding, section 10326 providing that "the cost of the proceedings under this chapter shall be apportioned in the discretion of the court or judge." That provision—regarding the word "cost" as more comprehensive than the word "costs" which has limited statutory definition—though not referred to, might be considered as enlarging the scope of allowance beyond the items of costs specified in the statute of general application, (sec. 9802, Rev. Codes), justifying the inclusion of attorneys' fees as costs in such special proceeding.

As it appears to us, the question of allowance of attorneys'

fees in will contests has not been clearly determined by the decisions of this court, and this now seems to be the time "when it is squarely presented and necessary to a decision." (*In re Baxter's Estate,* supra [94 Mont. 257, 22 Pac. (2d) 187].)

It is well settled law in this state that attorneys' fees are not allowed as costs under statutory provisions for costs in ordinary litigation. It is only where provided for specially by statute, or by agreement of the parties, that attorneys' fees may be considered at all as an item of recovery incident to litigation. (*Smith* v. *Fergus County,* 98 Mont. 377, 39 Pac. (2d) 193; *Bovee* v. *Helland,* 52 Mont. 151, 156 Pac. 416.) In the *Bovee Case,* attorneys' fees were allowed as costs, but because the parties had agreed it should be so.

To get away from this general rule in any case, and where we must look to the law for the authority, we must find in the statute law special provision, expressly or by implication authorizing the allowance. We find no such provision in the law governing the proceeding in this case. We are therefore without authority to allow attorneys' fees even though our discretion might otherwise prompt us thereto.

The costs incurred by appellants in the prosecution of the appeal are allowed out of the assets of the estate. Attorney's fees are not allowed. No costs are imposed as against the appellants.

The decision as heretofore rendered is modified with the addition of the foregoing, and the petition for rehearing is denied.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and MORRIS concur.