No. 80-477

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

MERLE DAHL and MARIE DAHL,
husband and wife,

Plaintiffs and Respondents,

vs.

PETROLEUM GEOPHYSICAL COMPANY,
a Corporation licensed to do business
in Montana,

Defendant and Appellant.

---

Appeal from: District Court of the Fifteenth Judicial District,
In and for the County of Sheridan.
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Robert J. Emmons, Great Falls, Montana

For Respondents:

Otto T. Habedank, Sidney, Montana
Richard J.Overby, Plentywood, Montana

---

Submitted on briefs: June 24, 1981

Decided: September 3, 1981

Filed: SEP - 3 1981

_Thomas J. Kearney_
_Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal by Petroleum Geophysical Company from a judgment awarding punitive damages in favor of Merle and Marie Dahl, based on a jury verdict rendered in the Fifteenth Judicial District, Sheridan County.

Merle and Marie Dahl (Dahl) sued Petroleum Geophysical Company (PGC) for damages claimed to have occurred to their farmlands when a seismograph hole drilled and "shot" by PGC brought a continuous water flow to the farm surface, which flow PGC failed to plug.

The Dahl complaint was in two counts for actual and punitive damages. The jury, on the submitted issue of comparative (called "contributory" in the instructions) negligence, found PGC 90 percent negligent, the Dahls 10 percent negligent and fixed actual damages at $16,500 and punitive damages at $8,500. Judgment was entered on October 30, 1980 against PGC for $14,850 actual damages and the punitive damage figure of $8,500.

PGC has appealed only from the punitive damages award. It has paid the judgment against it for actual damages, and satisfaction of judgment to that extent has been entered.

The six issues in appellant's brief can be stated as two:

1. Is this a contract case for which no punitive damages are allowable?

2. Is the evidence sufficient to justify submission of punitive damages as an issue to the jury and to support the award?

We resolve these issues in favor of Dahl and affirm the judgment of the District Court.

-2-

This case presents a novel appellate situation. Some of the fact issues upon which PGC relies were necessarily decided by the jury in arriving at its verdict for actual damages. Ordinarily on appeal, we review the evidence in the light most favorable to the prevailing party in the District Court. Holenstein v. Andrews (1975), 166 Mont. 60, 64, 530 P.2d 476, 478. In the Supreme Court, we do not retry factual determinations made at trial. Noll v. City of Bozeman (1977), 172 Mont. 447, 452, 564 P.2d 1296, 1299.

In this case, by satisfying the judgment for actual damages, PGC has acceded to the correctness of the judgment and accepted its benefits, particularly including the 10 percent reduction of the actual damages found by the jury. When a judgment is paid, it passes beyond our review. Gallatin Trust and Savings Bank v. Henke (1969), 154 Mont. 170, 177, 461 P.2d 448, 452. All questions of fact decided or impliedly decided by the jury underpinning the satisfied judgment become moot. This Court does not pass upon moot questions. State ex rel. Miller v. Murray (1979), ____ Mont. ___, 600 P.2d 1174, 1176, 36 St.Rep. 1713, 1715.

Even though here, the PGC has preserved its right to review the punitive damage portion of the judgment by filing a notice of appeal on that part of the judgment, we cannot review disputes which form the basis for the satisfied judgment. To rule otherwise might place this Court at odds with the underlying grounds of the satisfied judgment, which the appellant has obviously accepted.

The question of whether a contract existed between Dahl and PGC for the drilling of seismographic holes on Dahl's property was submitted to the jury as an issue of fact. The jury was instructed that every person is bound, without

-3-

contract, to abstain from injuring the property of another (instruction no. 6); that Merle Dahl was the agent for his wife Marie Dahl if a contract existed with PGC (instruction no. 12); that by virtue of a contract, if one existed, the negligence of Merle Dahl was imputed to Marie Dahl (instruction no. 13); that a business visitor on the premises of another is an invitee (instruction no. 16); the essentials of a contract (instruction no. 17); the essentials of an implied contract (instruction no. 18); the necessity of consent to a contract (instruction no. 19); what constitutes acceptance (instruction no. 20); the object of a contract (instruction no. 21); the legality of oral contracts (instruction no. 22); and that if a contract existed between Dahl and PGC, the jury could not award punitive damages (instruction no. 27).

Instructions from the court to the jury became the law of the case. Under the instructions, the jury awarded punitive damages, which impliedly necessitates the conclusion that no contract existed between Dahl and PGC. By awarding a reduction in damages because of contributory (comparative) negligence, the jury impliedly found that a tort was involved and not a contract. In paying the judgment based on the jury verdict, PGC acceded to what the jury impliedly found to reach that verdict. Under the instructions, the jury found there was no contract. Therefore, it is beyond our power as an appellate court to determine now the first issue here, whether a contract existed between Dahl and PGC for seismographic drilling. Obviously, if we were to reverse the punitive damages award on the ground that a contract existed here, we would be reversing the jury verdict, and negating the basis for the judgment, which has already been

-4-

satisfied. We hold therefore, that PGC may not prevail on the first issue.

We look now to the second issue, whether the District Court should have submitted to the jury the issue of punitive damages.

Punitive damages (referred to in our statutes as "exemplary damages") are awardable in an action for the breach of an obligation not arising out of contract where the defendant has been guilty of oppression, fraud, or malice, actual or presumed. Section 27-1-221, MCA.

The facts, in the light most favorable to the prevailing party, are that sometime prior to the drilling, a representative of PGC called Merle Dahl and offered him $25 per hole for a series of four or five holes to be drilled on Dahl's farm property. Dahl said that he belonged to an association which had set the going price for such drilling at $50 per hole. The representative said he would call back, which he later did. In the second conversation, the representative said that PGC would pay $50 per seismographic hole. Nothing further was said, and Dahl denied in the trial, that he ever gave specific permission to PGC or any of its representatives to go upon his lands for the purpose of drilling.

Subsequently, a seismographic crew arrived at Dahl's gate with several vehicles. They asked instructions from Dahl as to how to get across his land to another gate. With respect to drilling, Dahl testified "I absolutely told them not to drill down in my meadow, get the hell out of the meadow, to stay the hell out of there." Notwithstanding this instruction, the seismograph crew drilled a hole in the low meadow. At a depth of 120 feet, a union broke on the rotary drill, and at this point the PGC employee noticed that water was flowing from the well. He thereafter continued

-5-

drilling until the depth of 200 feet was reached. Twenty-five pounds of dynamite was inserted into the hole. The hole was "shot." The third day thereafter, a PGC representative noticed that water had started flowing in the drilled hole, but did nothing toward plugging the hole and left for other territory. However, he informed his supervisor that the well was still flowing. Shortly after the PGC crew left, another PGC person came out with some dry cement and ineffectively tried to plug the hole.

Later PGC made a second attempt to stop the running water. The surrounding ground was in such condition that the truck could not get within 100 feet of the hole. Cement was pumped into the hole but the attempted plug was ineffectual. Forty-six acres of farmland were damaged.

Thus, the evidence bears out a questionable permission to do the seismographic drilling, explicit directions from Dahl not to drill in the area where the water commenced to flow, and a subsequent course of neglect in failing to plug the well or make other effective efforts to save the farmlands from damage.

The District Court denied motions to remove the issue of punitive damages from the jury and submitted the issue under an instruction which told the jury that such damages were awardable if Dahl suffered injuries through gross negligence, wilful or wanton misconduct, or malice, and the court defined malice for the purpose of such determination. The jury was instructed to consider all of the attendant circumstances, including the nature, extent and enormity of the wrong, the intent of the party committing it, the amount of actual damages, and generally all the circumstances attending the particular acts involved, including any mitigating circumstances.

-6-

Withdrawal of the issue of punitive damages from the jury has the effect of a directed verdict on that issue (though no formal direction to the jury would have been given) and the same rules ought to apply. Thus, an issue should never be withdrawn from the jury unless the conclusions from the facts advanced by the moving party follow necessarily, as a matter of law, that recovery cannot be had under any view which can be reasonably drawn from the facts which the evidence tends to establish. Sistok v. Northwestern Tel. Systems, Inc. (1980), ___ Mont. ___, 615 P.2d 176, 178, 37 St.Rep. 1247, 1249 and Thomas v. Merriam (1959), 135 Mont. 121, 126, 337 P.2d 604, 606. Any genuine issue of fact should be submitted to a jury unless the evidence is susceptible to but one construction by reasonable men, and that in favor of the moving party. Welch v. Nepstad (1959), 135 Mont. 65, 73, 337 P.2d 14, 18.

We find the evidence adduced here by the plaintiff presented an issue of punitive damages, and that the issue was properly submitted to the jury. The jury having made its determination that punitive damages were in fact due Dahl, this Court has no basis in law upon which to set that portion of the verdict aside.

Dahl in this appeal asks that we issue an order requiring PGC under specific performance to plug the well as required by section 82-1-104, MCA, unless Dahl waives the statutory requirement. This is an issue not tried in the District Court and not before us on the appeal.

The judgment of the District Court is affirmed.

John C. Sheehy
_____
                              Justice

-7-

We Concur:

_____
Chief Justice

_____

_____

_____
Justices