No. 84-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

MARTIN DEVELOPMENT CO., a corp.,
et al.,

                Defendant and Respondent,

     -vs-

KEENEY CONSTRUCTION CO.,
a Montana corp.,

                Plaintiff and Appellant,

     -vs-

MOUNTAIN WOOD APARTMENTS and
WALTER PESCHEL, et al.,

                Cross-Defendant and Appellant.

_____

APPEAL FROM: District Court of the Fourth Judicial District,
            In and for the County of Missoula,
            The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

     Larry Elison argued, Missoula, Montana

     For Respondent:

     Donald V. Snavely argued, Missoula, Montana

_____

              Submitted:  March 15, 1985

                Decided:  May 24, 1985

Filed:  MAY 24 1985

*Ethel M. Harrison*
_____
              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In the action below, Martin Development Company, Inc. ("Martin") sought to recover damages from Walter H. Peschel ("Peschel"), an individual, and Mountain Wood Apartments ("Mountain Wood"), a limited partnership, for breach of a construction contract. The District Court of the Fourth Judicial District, Missoula County, sitting without a jury, the Honorable Robert J. Boyd of the Third Judicial District presiding, found for Martin and awarded lost profits, interest, and attorneys' fees. From this judgment Peschel and Mountain Wood appeal.

In 1977, Dr. Walter Peschel undertook negotiations with Charles Isaly for the construction of an apartment complex known as the Mountain Wood Apartments. Dr. Peschel negotiated as the sole general partner of Mountain Wood Apartments, a limited partnership. Charles Isaly negotiated as the managing agent for Martin Development Company, a general construction contractor. The negotiations culminated on or about June 5, 1978, when the parties orally agreed to a constuction contract known as the MacDonald Agreement.

The majority, but not all, of the financing for the apartment project ("project") came from a loan from Washington Mortgage Company, Inc. ("Washington Mortgage") of Seattle. This loan was guaranteed by the United States Department of Housing and Urban Development, Federal Housing Administration ("HUD"). Because of this guarantee, Peschel and Martin signed a HUD form constuction contract on June 6, 1978. There are no disputes regarding this contract.

The loan from Washington Mortgage did not cover the entire cost of the project because Peschel wanted to build a complex of higher quality than could be constructed with the

HUD insured funds. Peschel understood that the HUD loan would be at least $100,000 short of the amount necessary to build the project he desired and that he would have to make up the difference. Terms concerning the extra funding required above the HUD loan were contained in the MacDonald Agreement.

Construction commenced on the project in July of 1978. Shortly thereafter problems arose concerning Peschel's obligations to fund the cost shortages during the course of constuction. Negotiations to resolve the problems were undertaken by Peschel, Isaly, and their respective attorneys. A crisis stage in the negotiations was reached in late summer of 1979 when most subcontractors refused to work due to nonpayment of their bills. On October 2, 1979, Washington Mortgage gave notice that Peschel had defaulted on the loan and indicated that it intended to assign the loan to HUD. The halt in construction and the notice of default resulted in intense negotiations between the parties. A written agreement entitled Addenda No. 1 ("Addenda") was concluded and signed on November 10, 1979. The Addenda resolved all disputes existing between the parties as of that date, and released and discharged the parties from claims arising out of prior disputes. Paragraph 14 of the Addenda states that the "Addenda and the agreement and Exhibit attached hereto constitute the entire agreement between the parties." After execution of the Addenda, construction resumed on the project.

On December 7, 1979, approximately one month after the signing of the Addenda, construction Draw No. 13 was mailed to Washington Mortgage. Normal time for payment of a draw was two or three weeks. But Draw No. 13 was not and has never been paid. The reason was that Washington Mortgage,

3

pursuant to its notice of default, had assigned the loan to HUD. On January 24, 1980, Martin sent a notice of default to Peschel. The notice specified that the default resulted from Peschel's failure to perform acts necessary to allow payment of Draw No. 13. Peschel was given fifteen days to cure the default but did not do so.

Trial was held in this matter on May 9th, 10th and 11th of 1983. The District Court issued findings, conclusions and final judgment on January 27, 1984. Judgment was for Martin and against Peschel in the amount of $72,000 plus interest. Lost profits accounted for $40,000 and attorneys' fees were awarded in the amount of $20,000. The balance ($12,000) was interest on the $40,000. In addition, $10.96 per day was assessed until satisfaction of the judgment. The court ordered that judgment be satisfied from a rent impoundment account administered by First Montana Title Company of Missoula.

Peschel did not take any action to stay execution of the judgment. On February 6, 1984, Peschel, through his attorney, filed a motion for a new trial. On February 10, 1984, Martin filed a satisfaction of judgment. On February 23, 1984, Peschel withdrew his motion for a new trial, withdrew his attorney, and substituted himself as counsel pro se. On the same day he filed a notice of appeal.

The following issues are presented:

(1) Whether the Addenda represents the entire agreement of the parties?

(2) Whether the District Court properly awarded $40,000 to Martin in lost profits?

(3) Whether the District Court properly awarded attorneys' fees to Martin?

(4) Whether the District Court properly awarded interest to Martin of ten percent on the unpaid profit?

(5) Whether this appeal should be dismissed as moot for the reason that the judgment of the District Court has been satisfied?

We hold that the Addenda represented the complete and final agreement of the parties. The introductory paragraph of the Addenda reads as follows: "Whereas, it being in the best interests of each party signatory to this agreement to set forth in writing all agreements that exist as of November 7, 1979, the parties hereby agree as follows: . . ." (Emphasis added.) In addition, paragraph 14 of the Addenda begins, "This addenda and the agreement and exhibits attached hereto constitute the entire agreement between the parties." This language is unambiguous: the Addenda, and any agreement and exhibits attached to it, is the agreement of the parties. This Court has said on numerous occasions that ambiguity exists when a contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. See e.g., Martin v. Community Gas & Oil Co. (Mont. 1983), 668 P.2d 243, 40 St.Rep. 1385; Sounders v. Montana Power Co. (Mont. 1983), 662 P.2d 289, 40 St.Rep. 583. The above quoted language from the Addenda is not reasonably subject to different interpretations. The Addenda, and only the Addenda, controls the obligations of the parties in this case. Martin argues that ambiguity exists in the fact that paragraph 14 of the Addenda refers to an attached agreement when no agreement is attached. Martin further argues that sworn testimony establishes that the agreement to be attached was the MacDonald Agreement. Unfortunately, respondent confuses ambiguity with mistake. It may be true that the parties intended to attach the MacDonald Agreement but,

5

because of a mistake, did not do so. If that is the case, however, respondent, before bringing suit, should have sought to reform the Addenda to make it conform to the real agreement of the parties. This was not done and it is not the province of this Court to entertain an action for reformation on appeal.

Because the Addenda is the entire agreement of the parties, we refer to it in order to determine if the District Court properly calculated lost profit, interest on that profit, and attorneys' fees.

Paragraph 3 of the Addenda provides that Martin receive $65,000 total profit from the project. Further, it states that $22,000 of that total had already been paid. At trial, Martin admitted receiving $3,000 additional profit since the conclusion of the Addenda. Therefore, at the conclusion of the trial $40,000 in profit provided by the Addenda remained unpaid. The District Court awarded that sum to Martin. We concur.

Peschel argues that he was not in breach, but, assuming arguendo that he was in breach, he should only have to pay a pro rata share of lost profit, or $20,000. There is no merit in either of these contentions. The evidence is conclusive that Peschel breached his contract with Martin. At the time the Addenda was executed, Peschel signed a letter to an official of HUD indicating that Martin was not responsible for previous problems with the project. After the Addenda, Martin resumed work on the project and continued until Draw No. 13 was not timely paid. When work stopped, HUD considered the possibility of bringing a claim against Martin's bonding company but concluded that such claim would fail because Martin was not the primary cause for the failure of the project. There is nothing in the record to indicate that

Martin was either in breach, or caused the breach. While it is true that the Addenda does not explicitly make the payment of Draw No. 13 a condition of performance, it goes without saying that a construction contractor will not work without being paid. Peschel's problems with his lender were not the fault of Martin. Martin's obligation under the Addenda was to construct apartment buildings; Peschel's obligation was to pay for that construction. Martin was willing and able to meet its obligations; Peschel failed to meet his. It is the law in this State that a non-breaching party should be placed in as good a position as if the contract had been performed. Kirby v. Kenyon-Noble Lumber Company (1976), 171 Mont. 329, 558 P.2d 452. $40,000 profit was due Martin upon completion of the project. That amount was thus properly awarded when Peschel's breach prevented completion.

The District Court properly awarded ten percent interest on the lost profit, but for the wrong reason. In paragraph 4 of its conclusions of law, the District Court stated that Martin was entitled to ten percent interest per annum on the lost profits as provided by contract. There is, however, no provision in the Addenda, the controlling instrument in this case, relating to interest rates on lost profits. However, ten percent interest per annum on the lost profits is provided by section 25-9-205, MCA. The judgment of the District Court pertaining to lost profit and interest therefore remains undisturbed.

Section 25-10-301, MCA, provides that "The measure and mode of compensation of attorneys and couselors at law is left to agreement, express or implied, of the parties, . . . " The trial court awarded $20,000 in attorneys' fees to Martin "pursuant to the agreement of the parties." There is, however, no provision in the Addenda

7

regarding attorneys' fees, and any prior agreement, express or implied, is made a nullity by the terms of the Addenda. Notwithstanding this, Martin argues that attorneys' fees may be recovered as an element of damages where the conduct of one party causes another party to become invloved in litigation with a third party. In support of this proposition Martin cites to McCarty v. Berryman (Mont. 1980), 620 P.2d 1221, 37 St.Rep. 2007. In McCarty this Court affirmed the inclusion of attorneys' fees as part of an award of damages in an action for negligent misrepresentation. The statute relied on was section 27-1-317, MCA, titled "Breach of obligation other than contract." (Emphasis added.) Thus McCarty sounds in tort and is not authority for awarding attorneys' fees in a breach of contract action where such fees are not mentioned in the contract. The other case cited by Martin in support of an award of attorneys' fees is Smith v. Fergus County (1934), 98 Mont. 377, 39 P.2d 193. Smith not only does not support an award of attorneys' fees in this case, it supports the contrary:

> "It is true that, in the absence of contractual stipulation therefore or statutory allowance thereof, attorneys' fees are not allowable in the action in which they are incurred . . . This rule precludes recovery of attorneys' fees paid in an action for breach of contract, as a part of the damages for the breach." Smith, 98 Mont. at 384, 39 P.2d at 195. (Citations omitted.)

The Court in Smith then distinguished the above rule by holding that the small amount awarded by the trial court was not an attorney's fee in the sense used in the rule but was rather an amount paid "incidentally to attorneys." Smith, 98 Mont. at 384, 39 P.2d at 195. Whatever the merits of that distinction in Smith, it has no application whatever to the present case. The amount at issue here is large and clearly

8

is for the rendering of Martin's attorneys' services in this litigation. It is in no way incidental. Therefore, there is no basis to affirm an award of attorneys' fees to Martin in this case.

Finally, Martin asks this Court to rule this appeal moot because the judgment has been satified. We refuse to so rule. A cursory review of the Montana case law in the area of mootness indicates some confusion. A closer look, however, reveals that the confusion is more apparent than real. The basic rule on mootness was stated best in Montana National Bank of Roundup v. State Department of Revenue (1975), 167 Mont. 429, 432-433, 539 P.2d 722, 724, wherein the Court wrote:

> "It is equally well recognized that payment of a money judgment by the judgment debtor does not, by itself, render the cause moot for purposes of appeal. A defeated party's compliance with the judgment renders his appeal moot only where the compliance makes the granting of effective relief by the appellate court impossible." (Citations omitted.)

Martin contends that other and more recent cases contradict the rule stated in Roundup and should be followed. The cases cited are First Security Bank of Kalispell v. Income Properties, Inc. (Mont. 1984), 675 P.2d 982, 41 St.Rep. 212; Dahl v. Petroleum Geophysical Company (Mont. 1981), 632 P.2d 1136, 38 St.Rep. 1474; and Gallatin Trust and Savings Bank v. Henke (1969), 154 Mont. 170, 461 P.2d 448. These cases are not in conflict with Roundup. In First Security Bank the defendants surrendered real property pursuant to a court order. They neither sought a stay of judgment nor requested a supersedeas bond. This Court dismissed the appeal as moot because it was not able to render the relief defendants sought. This holding is in perfect accord with the rule in Roundup, quoted above. In Dahl this Court was faced with a "novel appellate

9

situation." 632 P.2d at 1137, 38 St.Rep. at 1475. Plaintiffs had prevailed below and had been awarded actual and punitive damages. The defendant paid the judgment for actual damages but appealed the punitives. The appeal was ruled moot because to rule otherwise might have placed the Court "at odds with the underlying grounds of the satisfied judgment," which the appellant had accepted. Dahl, 632 P.2d at 1137, 38 St.Rep. at 1476. The holding in Dahl on the question of mootness is limited to the special fact situation of that case. Finally, Martin cites to Gallatin Trust and Savings Bank in support of the contention that this appeal should be ruled moot. The Court in Gallatin Trust, however, anticipated the rule expressed in Roundup. It was noted in Gallatin that in State ex rel Hagerty v. Rafn (1956), 130 Mont. 554, 304 P.2d 918, the Court modified the rigid rule that when a judgment is satisfied it passes beyond review. "This Court in the [Hagerty] case appeared to have set up a new rule to the effect that where rights of third persons are involved and the parties cannot be restored to their original position the appeal becomes moot." Gallatin, 154 Mont. at 177, 461 P.2d at 451-452. Indeed, this rule was further refined in Roundup, which cited to Hagerty. Moreover, the holding in Gallatin, is in conformance with the rule expressed six years later in Roundup. Various changes of position occurred in Gallatin, in the course of satisfaction of judgment, which would have made it very difficult, if not impossible, for this Court to reverse. In the present case a simple money judgment was satisfied. No property changed hands pursuant to the judgment nor are there third party interests involved. There is no reason why this Court cannot grant effective relief.

In summary, the judgment of the District Court is affirmed in part and reversed in part. We hold: 1. The Addenda represents the entire agreement of the parties. 2. The District Court properly awarded $40,000 to Martin in lost profit. 3. The District Court properly awarded ten percent interest on the lost profit. 4. There is no provision for attorneys' fees in the Addenda and therefore the District Court's award of attorneys' fees is reversed. 5. This appeal was not rendered moot because the judgment below was satisfied.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11