No. 03-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 353

IN RE THE MARRIAGE OF
TAMMY LEE HORTON,

        Petitioner and Respondent,

    and

ROBERT D. HORTON,

        Respondent and Appellant.


APPEAL FROM:    District Court of the Twentieth Judicial District,
                     In and for the County of Sanders, Cause No. DR 2002-36
                     The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Dustin Chouinard, Datsopoulos MacDonald & Lind, Missoula, Montana

        For Respondent:

                Jean Adele Carter, Attorney at Law, Thompson Falls, Montana


                     Submitted on Briefs:  March 30, 2004

                               Decided:  December 14, 2004

Filed:

                                  Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Robert D. Horton (Robert) appeals various findings and conclusions included in the Dissolution Decree issued by the Montana Twentieth Judicial District Court on April 23, 2003.  We affirm in part and reverse and remand in part.

## ISSUE

¶2     The issue before the Court is whether the District Court erred in its distribution and valuation of the marital estate.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Tammy Horton (Tammy) and Robert were married on August 21, 1993.  They have lived in Montana since their marriage.  The couple have two children, Garrett, born January 5, 1995, and Demi, born November 21, 1997.  The parties separated in January 2002 and a Petition for Dissolution was filed on May 8, 2002.  Tammy and Robert have entered into a court-approved Parenting Plan, the terms and conditions of which are not a part of this appeal.  A trial was held on March 24, 2003.  The District Court entered its Findings of Fact, Conclusions of Law, and Decree on April 23, 2003.

¶4     In the Decree, the court distributed the marital property in a manner that resulted in each party receiving a net distribution totaling $72,960.00.  Robert's distribution consisted of a 1991 Ford Explorer, his guns, his retirement/IRA account and life insurance policy, a 1993 Ford pickup truck, his mounts, miscellaneous pre-marital property which also included guns, and personal property in his possession.  Tammy was also required to make an equalization payment to Robert of $32,640.00.

¶5     Tammy's property distribution included six horses, her tack, her mounts, her "horse business," the horse trailer, the computer and accessories, her personal property in her possession,

2

and specified pre-marital property. It also included the marital home, the value of which was agreed upon by Tammy and Robert to be $200,000. Tammy assumed a mortgage of $40,000, which reduced the value allocated to her to $160,000. The court then further reduced the value of the home allocated to Tammy by $80,000. This was done based upon the testimony of Tammy and her father that her father had gifted to her home building labor and materials valued at $80,000. Reduced by the mortgage and the gift, Tammy's allocated value of the marital home was therefore $80,000.

¶6 Robert challenges the $80,000 "gift" reduction from the home's value. He also maintains that the court erred by including the value of his guns under both the pre-marital property and marital property calculations, and by undervaluing Tammy's tack. Lastly, he argues that the court entered erroneous findings regarding the income of the parties and that because such erroneous income figures were used to support the court's property distribution, the property distribution was further flawed.

## STANDARD OF REVIEW

¶7 We review a district court's findings of fact regarding a division of marital assets to determine whether the findings are clearly erroneous. Findings are clearly erroneous if: (1) they are not supported by substantial evidence; (2) the district court misapprehended the effect of the evidence; or (3) the district court made a mistake. We review a district court's conclusions of law to determine whether the conclusions are correct. We will affirm a district court's division of property, absent clearly erroneous findings, unless we identify an abuse of discretion. *In re Marriage of Bartsch*, 2004 MT 99, ¶ 13, 321 Mont. 28, ¶ 13, 88 P.3d 1263, ¶ 13 (internal citations omitted).

**DISCUSSION**

¶8 We first address Robert's claim that the court's reduction of the value of the marital home by $80,000 was arbitrary, prejudicial, and unsupported by the record. Robert maintains that Tammy failed to meet her burden of establishing that her father had actually "gifted" to her his contracting services and home building materials worth $80,000. He also asserts that the District Court erroneously neglected to consider his contribution to the marital residence when it decided how much of the gift to exclude from the marital estate and attribute to Tammy personally.

¶9 Tammy and Robert bought property in Sanders County shortly after their marriage. It is undisputed that they paid $12,000 for the property. They began construction of their home in the mid-nineties. During construction, many friends and family members assisted in projects related to the home-building. Many of these people testified at trial that Tammy's father, an experienced log home builder, donated substantial time over one to two years working on the house. Also, Tammy testified that, while she was in high school, her father told all of his children that in lieu of a college education, he would build them each a house. She and her father viewed the effort, as well as the materials he donated to the project, as the gift he had previously promised Tammy. Robert maintains that he knew nothing of this "gift" until divorce proceedings were underway.

¶10 Section 40-4-202, MCA, describes how property should be divided upon a marriage's dissolution:

> (1) In a proceeding for dissolution of a marriage, . . . the court . . . shall . . . equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . .
>
> In dividing . . . property acquired by gift . . . the court shall consider those contributions of the other spouse to the marriage, including

4

(a) the nonmonetary contribution of a homemaker; [and]

(b) the extent to which such contributions have facilitated the maintenance of this property. . . .

¶11 As we have indicated in the past, this statute vests the district court with broad discretion to apportion a marital estate in a manner which is equitable to each party under the specific circumstances. *In re Marriage of Binsfield* (1995), 269 Mont. 336, 888 P.2d 889. Furthermore, in non-jury cases, such as this one, the district court judge is charged with listening to and weighing the evidence presented. The judge must determine the credibility of each witness based upon his or her demeanor, temperament, attitude, and candor, among other things. For these reasons, this Court defers to the district court's discretion in matters of evidence weight and credibility, particularly when conflicting evidence is presented. *In re Marriage of Grende*, 2004 MT 36, ¶ 27, 320 Mont. 38, ¶ 27, 85 P.3d 788, ¶ 27.

¶12 Robert asserts that the record is void of "any evidence" that would tend to establish that Tammy's father gifted to her labor and materials valued at $80,000. This is incorrect. Rather, there was conflicting evidence. Some witnesses claimed they did not believe that such a gift was given, while others claimed they did not know whether such a gift was made. However, the fact that some witnesses did not know of the arrangement between Tammy and her father does not necessarily doom it to non-existence. Tammy and her father both testified that he had promised, years earlier, to build a home for Tammy and his other children. By the time he began working on Tammy's home, he had already fulfilled this promise for his oldest child. Tammy's father also testified that he would not have done this for Robert; he intended his gift of labor and materials for his daughter. The District Court concluded that, based on the totality of evidence, Tammy had met her burden and established that her father had given to her his time, labor and some materials in the building of her home.

5

¶13 Robert also argues that the "gift" is not traceable because Tammy's father kept no records of the value of the gift and thus it is commingled into the entire house and cannot be separated. Unlike in *In re Marriage of Herron* (1980), 186 Mont. 396, 608 P.2d 97, traceability in this case is not a complex notion. In *Herron*, the court had to trace an initial gift from 1962 to 1979 and across several residential home purchases, sales, and cross-country moves. Here, there is a single gift embedded into the total value of one home. Upon a finding of the existence of the gift from a non-marital source, *i.e.*, Tammy's father, there is essentially nothing to "trace."

¶14 Robert also relies on *In re Marriage of Steinbeisser*, 2002 MT 309, 313 Mont. 74, 60 P.3d 441, which we conclude is distinguishable from the case at bar. In *Steinbeisser*, there was a protracted pattern of commingling and expenditure of inherited funds, making it impossible to trace the money and its eventual dissipation. Such is not the case here.

¶15 Lastly, we are unpersuaded by Robert's argument that the entire gift should be considered marital property because the value of the gift was commingled and cannot be separated from the value of the house as a whole. Commingling of a gift with jointly-owned marital property does not automatically preclude the gift from being considered separate property. *See In re Marriage of Engen*, 1998 MT 153, 289 Mont. 299, 961 P.2d 738 (Proceeds from the sale of a home given to husband by his mother, deposited into couple's joint checking account and used to purchase a condominium were held to be separate property of the husband upon dissolution of the marriage); *Herron*, 186 Mont. at 404, 608 P.2d at 102 (Property gifted to both parties by wife's father and held jointly as and commingled with marital property should not be distributed equally to the parties because the wife's father had given the properties to provide for his daughter). See also *Siefke v. Siefke*, 2000 MT 281, 302 Mont. 167, 13 P.3d 937. Upon determining an accurate value for the gift

6

from Tammy's father, and complying with the requirements of § 40-4-202, MCA., the District Court may attribute all or some of that value to Tammy as separate property despite the commingling.

¶16    We next turn to the Court's valuation of the gift. Tammy's father did not keep records of the value of the materials and time he provided. At trial, he accepted Tammy's estimate that his time, materials and services had an $80,000 value. In an effort to establish a fair value for the services and materials her father provided, Tammy obtained quotes, in 2002, from various log home builders and calculated an average cost of $80,000 for materials and construction of all or a part of a log home. Additionally, a full-time assistant to Tammy's father, who also worked on Tammy's house, testified to his belief that the value of Tammy's father's labor alone would be $80,000. In short, there was some testimony to support the $80,000 value assigned to Tammy's father's contributions; the problem is that it is vague and inherently conflicting. This problem is compounded by the fact that we are unable to mathematically reconcile the District Court's $80,000 valuation of that gift with the record.

¶17    As stated above, the parties agree that the value of the property at the time of dissolution was $200,000. Also, the parties agreed that they paid $12,000 for the property. Furthermore, Robert submitted to the court a "Construction Cost Breakdown" presented to Glacier Bank in conjunction with a home building loan. This document projected the cost of property, labor and materials for the home to be in the range of $160,000. Given the parties' general agreement on the value of the home and the cost of building it exclusive of Tammy's father's contributions, the assignment of an $80,000 value to Tammy's father's contribution simply doesn't add up. Therefore, we must remand this matter to the District Court for a reassessment of the gift value and redistribution of property in accordance with this reassessment.

7

¶18 Robert further claims that the District Court failed to consider his contributions to the marital residence and real property in dividing the real property. There was testimony regarding Robert's contribution to the building of the home, as well as to the improvements, *i.e.*, barn, corral, fencing, which were built after the house was finished. There was also testimony regarding Tammy's substantial contribution to the family and the building of the house. Robert claims that the District Court failed to consider his contributions. A more accurate statement is that the District Court failed to include specific findings relating to this issue in its Findings of Fact, Conclusions of Law and Decree. As we have stated on numerous occasions, "[w]hile articulation of [the] factors [in § 40-2-202, MCA] is encouraged, the absence of specific findings does not automatically warrant remand." Rather, we look to determine if substantial evidence exists to support the District Court's findings. *In re Marriage of Mouat* (1987), 228 Mont. 430, 743 P.2d 602. Here, the court was presented with evidence as to both parties' substantial contributions to the maintenance and total value of this property. Sufficient evidence was presented to support the court's conclusion that the contributions of both parties was fairly equivalent. As such, it was unnecessary that the District Court offset the value of Tammy's father's gift to reflect Robert's contributions to the property.

¶19 Next, Robert argues that the District Court erred in valuing the marital estate. He complains of the values assigned to his guns and Tammy's equestrian tack. Conflicting evidence was presented by the parties and other witnesses as to the value of these items. As we have frequently held, the district court is in the best position to observe and judge witness credibility, therefore, "we will not second guess the district court's determination regarding the strength and weight of conflicting testimony." *In re Marriage of Mease*, 2004 MT 59, ¶ 50, 320 Mont. 229, ¶ 50, 92 P.3d 1148, ¶ 50.

¶20 Lastly, Robert maintains that the District Court erred in its findings regarding the income of the parties. The District Court noted in its Decree that "both parties did an incomplete and poor job of stating Income and Deductions." The court, therefore, used its discretion to assign a reasonable income to both parties based upon the evidence presented. We conclude that the court's decision was not clearly erroneous.

## CONCLUSION

¶21 Based on the foregoing, we affirm the District Court's conclusion that Tammy's father made a gift to her of labor and materials in the construction of the family home. However, in light of the conflicting evidence on valuation, as set forth above, we reverse the District Court's attribution of $80,000 to the value of the gift. We remand for a reassessment of the value of this gift and redistribution of the marital estate accordingly. With the exception of those Findings and Conclusions relating to valuation of the gift and the resulting distribution of the marital property, we affirm the remainder of the District Court's Findings of Fact, Conclusions of Law and Decree.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

Justice John Warner dissenting.

¶22    I would affirm the judgment of the District Court.

¶23    The Court finds the evidence sufficient to establish that part of the house was gifted to Tammy by her father. However, the Court concluded that evidence was insufficient to establish its value. I agree that the evidence of the amount of the gift was not a full detailed appraisal. However, Tammy did research by going to four separate log home builders to obtain pricing information. Estimates were admitted into evidence. She did inform herself and testify as to what the value of the gift was. Her witnesses did confirm an estimate of such value.

¶24    There was disputed testimony concerning how much material and labor Tammy's father put into the house. The District Court obviously believed the evidence Tammy presented.

¶25    Robert insisted that there was no gift at all. While he presented evidence that there was no gift, and said that Tammy's father did not donate all that he said he did, Robert presented no evidence that the gift was worthless, or less than the $80,000 Tammy claimed. Therefore, I conclude that the District Court did not err when it found the value of the gift based on evidence that was unimpeached and sufficient.

¶26    As the Court concluded, the parties agreed that the land, house and grounds had a value of $200,000. The District Court found there was a debt on the house of $40,000, that $80,000 of its value was a gift to Tammy and that the remaining $80,000 was to be divided between the parties. The District Court's figures add up. For some reason, the Court is concerned about the figures on an exhibit entitled Construction Cost Breakdown introduced into evidence by counsel for Robert during his cross-examination of Tammy. This exhibit is as follows:

CONSTRUCTION COST BREAKDOWN

RESPONDENT'S EXHIBIT D

| # of Line Item | | Contractor Material A | Labor B | Applicant Material C | Labor D |
|---|---|---|---|---|---|
| 1. | | 24,000 | | | Paid |
| 2. Plans, Permits, & Survey | NA | | | | |
| 3. Utilities | Power / Phone | 1,200 | | | Paid |
| 4. Water/Water Well | Well / Pump | 3,000 | | | Paid |
| 5. Sewer/Septic | Tank / Drainfield | 1,500 | | | Paid |
| 6. Access Road/Driveway | Excavate / Gravel | 2,000 | | | Paid |
| 7. Excavation/Backfill | Crawl Space | 1,000 | | | Paid |
| 8. Footings/Foundation | Concrete | 2,000 | | | Paid |
| 9. Basement Floor | NA | | | | |
| 10. Floor Joist/Sub-Floor | 2x10's ; 3/4 plywood | 5,000 | | | Paid |
| 11. Framing-Wall Exterior, Interior/Sheathing | | 25,000 | | | Paid |
| 12. Framing-Roof/Trusses/Sheathing/Facia | | 10,000 | 5,600 | | |
| 13. Roofing | Asphalt | 1,200 | 1,400 | | |
| 14. Windows/Exterior Doors | | 2,400 | 800 | | |
| 15. Exterior Finish Siding/Soffit, etc. | NA | 1,650 | 230 | | |
| 16. Furnace/Heating | Oil | 2,000 3,000 | | | |
| 17. Plumbing Rough-In | | 3,000 | 4,500 | | |
| 18. Finish Plumbing | | 1,000 | 500 | | |
| 19. Wiring Rough-In | | 3,500 | 2,000 | | |
| 20. Finish Wiring | | 450 | 450 | | |
| 21. Insulation | Roof only | 3,000 | 1,000 | | |
| 22. Drywall-Hanging | | 4,500 | 1,000 | | |
| 23. Tape/Texture | | 600 | 400 | | |
| 24. Fireplace/Wood Stove/Flue | | 2,000 | 3,500 | | |
| 25. Cabinets/Vanities | | 2,000 | 2,100 | | |
| 26. Interior Trim | 900 | 5,000 | 1,200 | | |
| 27. Interior Doors | | 1,000 | 500 | | |
| 28. Shelves/Closet Rods, etc. | | 300 | 200 | | |
| 29. Exterior Painting | Oil / Chinking | 1,200 | 1,400 | | |
| 30. Interior Painting/Paper | | 4,000 | 800 | | |
| 31. Carpet/Vinyl/Wood Flooring/Underlayment | | 4,000 | 4,500 | | |
| 32. Tile | NA | | NA | | |
| 33. Stairs/Railings | Log | 2,500 | 50 | | Paid |
| 34. Finish Hardware/Mirrors, etc. | | 800 | 450 | | |
| 35. Exterior Concrete/Flatwork | | 600 | 400 | | |
| 36. Deck/Porches | Lumber | 1,500 | 2,500 | | |
| 37. Garage-Door/Floor/Drive/ | NA | | | | |
| 38. Appliances | | 4,000 | 5,000 | | 1500 |
| 39. Light Fixtures | | 1,500 | 300 | | |
| 40. Gutters/Downspouts | NA | | | | |
| 41. Yard-Finish Grade/Landscaping | NA | | | | |
| 42. Cleanup | NA | | | | |
| 43. Misc./Port/Toilet Rental/Bills | | 1,000 | | | |
| 44. | | | | | |
| 45. | | | | | |
| 46. Contingency/Retainage | | | | | |
| 47. Profit/Overhead/Insurance | | 3,000 | | | |

COLUMN TOTALS Total paid to date $65,700 | 128,750 | 31,200 | | |

CONTRACTOR & APPLICANT TOTALS (A+B &

TOTAL PROJECT COST (A + B + C + D)

Post-It Fax Note 7671

To Rob Horton
From S Procopis
Phone # 883-4375
Fax # 833-3593
Fax 026-3083

WE HEREBY CERTIFY THIS PROJECT WILL BE COMPLETE & READY FOR USE

THIS INFORMATION HAS BEEN SUBMITTED BY:

APPLICANT: Robert 9 7

CONTRACTOR _____ DATE ____

¶27    Tammy knew nothing about the exhibit, other than it had been submitted to the bank.  She did not know when.  She pointed out that the exhibit was inaccurate and stated it was probably just a proposal.  At no time did Robert, or anyone else, testify this exhibit represented $159,950 in costs and labor, in addition to the $12,000 paid for the land.  Robert's counsel's statement, in his reply brief, that such is the case is a misrepresentation.  Likewise, counsel's representation in his proposed findings of fact and conclusions of law filed with the District Court, that Robert testified this exhibit reflected an accurate breakdown of the home's construction costs, is not supported by the record.  Robert did not dispute at trial Tammy's testimony that the cost of the land was doubled in this exhibit, $24,000 and not the $12,000 actually paid.  Nor did he dispute her testimony that labor had been marked "paid" and was not included in any cost estimate.  The exhibit itself is undated, but says "Total paid to date $65,700."  Then, it appears that the proposal is for another $128,750 in material and $31,200 in labor.  Of course, the total of these amounts is $225,650, which is more than the parties themselves agreed the property is worth.  Further, there is no way to evaluate the labor that was somehow already paid for.  This exhibit cannot be used to add up anything.

¶28    The District Court believed Tammy's documentary evidence and testimony that the value of the gift from her father to her was $80,000, and so found.  This finding is supported by substantial evidence, is essentially uncontroverted, and is not clearly erroneous.  I dissent from the Court's decision to remand this action for further proceedings.

/S/ JOHN WARNER

Justice Jim Rice joins in the foregoing dissent.

/S/ JIM RICE

12