No.04-572

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 230

IN RE THE MARRIAGE OF

MARTHA J. DAHM,

        Petitioner and Respondent,

   and

STEPHEN G. DAHM,

        Respondent and Appellant.

APPEAL FROM:    The District Court of the Nineteenth Judicial District,
                 In and For the County of Lincoln, Cause DR-2003-98,
                 Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Scott B. Spencer, Attorney at Law, Libby, Montana

       For Respondent:

           Amy N. Guth, Attorney at Law, Libby, Montana

Submitted on Briefs:  November 16, 2005

Decided:  September 13, 2006

Filed:

_____
                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Stephen G. Dahm (Stephen) appeals from the findings of fact, conclusions of law, and decree of dissolution entered by the Nineteenth Judicial District Court, Lincoln County, excluding from the marital estate certain real property deeded to Martha J. Dahm (Martha) and ordering that Stephen pay a $54,232 equalization payment to Martha. We affirm in part, reverse in part, and remand.

¶2 We address the following issues on appeal:

¶3 1. Whether the District Court erred in concluding deeded property was solely a gift to Martha from her parents, and, therefore, not included in the marital estate.

¶4 2. Whether the District Court erred in concluding that Stephen did not contribute to the gifted property's preservation or appreciation during the marriage.

¶5 3. Whether the District Court erred in ordering Stephen to pay an equalization payment of $54,232 to Martha, a sum that represented the entire difference between the values of assets awarded to Stephen and Martha from the marital estate.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Stephen and Martha were married on May 28, 1983, but had been together since approximately 1979, and had lived together since 1982. Stephen and Martha had three children during their marriage and separated in March 2004.

¶7 In March of 1981, Martha's parents, Fred and June Clark, prepared a warranty deed transferring certain real property (Eureka property) to Martha. The property, consisting of 17.5 acres of raw land near the Canadian border, north of Eureka, had been

2

in Martha's family for several generations and Martha had spent time there as a child. Martha's parents deeded the property to Martha Clark, Martha's maiden name, and the property remained under that name throughout the twenty-year marriage. Although Martha's parents had signed the deed in March of 1981, approximately two years before Stephen and Martha were married, the deed was not actually recorded until April 8, 1983, slightly less than two months before their wedding.

¶8 On September 17, 2003, Martha petitioned the court to dissolve her marriage with Stephen. After trial, the District Court entered its findings of fact, conclusions of law, and decree of dissolution, finding the Eureka property had been deeded to Martha by her parents with the intent that it be a gift solely to Martha.

¶9 Consequently, the District Court held the property was Martha's exclusively, and it was not included in the marital estate. In so holding, the court noted the conflicting evidence on the issue—that the property had been titled solely in Martha's name since receipt from her parents, but that Martha referred to the property as a wedding gift after the parties' marriage—and held that neither fact was necessarily determinative. Taxes on the property were paid from joint funds since their marriage, but the taxes were minimal, ranging in amounts from a low of $47 to a high of $268.22. Furthermore, while the Eureka property had dramatically increased in value since the marriage, the court found the increase was attributed to real estate market forces and not to improvements made by either party.

¶10    The court also found that Stephen brought certain real property, located in the State of Washington (Washington property), into the marriage. Stephen continued to individually own the property throughout the course of the marriage, but Martha and Stephen retired approximately $2,000 to $5,000 in debt owed against the property. This property was also deemed to be pre-marital property by the court, and, as such, not part of the marital estate. The court, in determining that both properties would remain the individual assets of the respective recipients, held that Stephen's monetary contribution, paid from the parties' joint funds, toward the Eureka property taxes was offset by Martha's contribution toward the retirement of debt on Stephen's Washington property.

¶11    In considering the contributions to the marital estate, the court found that, while Stephen earned more income, Martha had worked during much of the marriage and was the primary caregiver for the children. The court determined that the parties' respective contributions to the marital estate were essentially equal, and that it was appropriate for the estate to be equally divided between them.

¶12    As such, the court awarded Stephen and Martha real and personal property valued at $299,545 and $243,813 respectively, but, after giving Stephen a $1,500 credit for debt Martha had charged on his credit card after the separation, ordered Stephen to pay an equalization payment of $54,232 to Martha. This amount represented the difference between the values of the properties awarded to each party and was intended to equalize the distribution of the estate. Stephen was given until January 1, 2005, to make the

4

equalization payment, with the payment being secured by a lien on the family home, which had been awarded to Stephen.

¶13 On July 14, 2004, Stephen filed his notice of appeal challenging the District Court's exclusion of the Eureka property from the marital estate and the calculation of the equalization payment. On July 19, 2004, he filed a motion in the District Court to stay the equalization payment but failed to post a supersedeas bond, and, as a result, the court denied the motion. Stephen did not make the equalization payment by January 1, 2005. Martha offers, and Stephen does not deny, that on April 7, 2005, Martha caused the family home to be sold to satisfy the equalization payment.

¶14 On April 14, 2005, Martha moved to dismiss the appeal on the grounds that the matter was moot, and this Court denied the motion on May 4, 2005.

## STANDARD OF REVIEW

¶15 We review a district court's findings of fact regarding a division of marital assets to determine whether the findings are clearly erroneous. *In re Marriage of Gerhart*, 2003 MT 292, ¶ 15, 318 Mont. 94, ¶ 15, 78 P.3d 1219, ¶ 15. "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake." *In re Marriage of Steinbeisser,* 2002 MT 309, ¶ 17, 313 Mont. 74, ¶ 17, 60 P.3d 441, ¶ 17. Absent clearly erroneous findings, this Court will affirm a district court's division of property unless we identify an abuse of discretion. *Gerhart*, ¶ 16. The test for abuse of discretion in a dissolution proceeding is "whether the district court acted

arbitrarily without employment of conscientious judgment" or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26.

¶16 Lastly, the standard of review of a district court's conclusions of law is whether the conclusions are correct. *In re Marriage of Pfeifer*, 1998 MT 228, ¶ 9, 291 Mont. 23, ¶ 9, 965 P.2d 895, ¶ 9.

## DISCUSSION

**¶17 Whether the District Court erred in concluding deeded property was solely a gift to Martha from her parents, and, therefore, not included in the marital estate.**

¶18 Stephen argues that the District Court erred in determining that the Eureka property was conveyed as a gift solely to Martha in 1981, when the deed was not actually recorded until April 8, 1983, slightly less than two months before their wedding. He contends the date of the deed is not determinative of when real property is considered conveyed, but, rather, "[a] grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." Section 70-1-508, MCA. Therefore, Stephen reasons that while Martha's parents kept possession of the deed, there was no gift, and that the delivery of the deed to Martha only shortly before the marriage indicates the property was a marital gift from Martha's parents to both Stephen and Martha. He argues that Martha's reference in the wedding gift book that the property was a wedding gift and a wedding card from June with Martha's handwritten acknowledgement that the Eureka property was a gift from her parents is clear evidence of a mutual gift.

6

¶19 In response, Martha argues that Stephen's argument is specious, because whether the Eureka property was given to her two years or six weeks prior to marriage does not change the legal conclusion that Martha acquired the property by gift in her maiden name prior to marrying Stephen and it remained in her maiden name throughout the twenty-year marriage. She reasons the property was gifted to her from her parents based on the sentimental significance of the property, as she had visited the property numerous times as a child and it had been owned by her family for several generations. Moreover, she maintains her parents gifted the property without intending it to be a gift to Stephen. Accordingly, Martha contends the court did not clearly err in entering findings in support of her version of the facts.

¶20 Section 40-4-202, MCA, requires special consideration of property "acquired prior to the marriage" or "acquired by gift." The District Court was required to determine whether the Eureka property was such property in order to determine how to properly distribute the property. In so doing, the district court judge is charged with listening to and weighing the evidence presented. *In re Marriage of Grende,* 2004 MT 36, ¶ 27, 320 Mont. 38, ¶ 27, 85 P.3d 788, ¶ 27. "The judge must determine the credibility of each witness based upon his or her demeanor, temperament, attitude, and candor, among other things." *In re Marriage of Horton*, 2004 MT 353, ¶ 11, 324 Mont. 382, ¶ 11, 102 P.3d 1276, ¶ 11.

¶21 The District Court noted the Eureka property was deeded to Martha by her parents on March 13, 1981, approximately two years prior to the parties being married, and

believed her testimony that the property was intended as a gift only to Martha. While Stephen contends Martha's testimony at trial was not credible and was in contrast to Martha's acknowledgement of the property as a wedding gift, "when substantial credible evidence supports the findings and judgment, we will not alter a district court's marital property division absent an abuse of discretion." *In re Marriage of Binsfield*, 269 Mont. 336, 343, 888 P.2d 889, 893 (1995). The District Court had the opportunity to determine Martha's credibility as a witness, and, for these reasons, this Court defers to the District Court's discretion in matters of evidence, weight, and credibility, particularly when conflicting evidence is presented. *Grende,* ¶ 27.

¶22 The record contains evidence of generational ownership of the property, testimony about Martha's numerous childhood visits, along with Martha's testimony that her parents had discussed giving the property to her well before her marriage to Stephen. This is substantial evidence in support of the court's findings.

¶23 We conclude that the court's finding that the Eureka property was Martha's separate gifted property was not clearly erroneous.

**¶24 Whether the District Court erred in concluding that Stephen did not contribute to the gifted property's preservation or appreciation during the marriage.**

¶25 Stephen contends the appreciation of the Eureka property needs to be included in the marital estate, even if the property is considered a pre-marital gift to Martha, because he and Martha paid the taxes on the property for twenty years from their marital assets.

8

Stephen argues that payment of the taxes was a sufficient contribution, because the taxes were over $200 for many years and the taxes for a twelve-year period came to $2400.

¶26　Martha responds that both parties agree that Stephen's only contribution to the Eureka property was the payment of property taxes from joint funds, and further, the debt on Stephen's Washington property was also retired with joint funds. Therefore, Martha contends the court correctly found that Stephen's contributions to her gifted property was offset by her contributions to his pre-marital property, and, as a result, each party should take their respective pre-marital property.

¶27　Section 40-4-202, MCA, governs the distribution of pre-acquired or gifted property in a marital dissolution. It provides that, when dividing property acquired prior to the marriage, the court shall consider those contributions of the other spouse to the marriage, including the extent to which such contributions have facilitated the maintenance of this property. Section 40-4-202(1)(a) through (c), MCA. Furthermore, we have previously construed § 40-4-202, MCA, to mean that, regardless of which party holds title, pre-acquired or gifted property need not be included in the marital estate unless the non-acquiring spouse contributed to its preservation or appreciation. *In re Marriage of Rolf*, 2000 MT 361, ¶ 46, 303 Mont. 349, ¶ 46, 16 P.3d 345, ¶ 46 (citing *Engen,* ¶ 29.) We have held that the non-acquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts. *In re Marriage of Foster*, 2004 MT 326, ¶ 11, 324 Mont. 114, ¶ 11, 102 P.3d 16, ¶ 11 (citing *Engen*, ¶ 29). However, "a non-acquiring spouse is not entitled to a share of the increase

9

in premarital property when the property's appreciation is due simply to market factors." *Steinbeisser*, ¶ 47.

¶28    In concluding that Stephen was not entitled to any portion of Martha's pre-marital Eureka property, the District Court had to essentially find that he "made *no contribution* equitably justifying apportionment of that property." *Marriage of Turner,* 206 Mont. 292, 295, 670 P.2d 568, 570 (1983).  Although the property had substantially increased in value during the marriage, it is clear that the increase was not due to the efforts of either party.[1]  Neither spouse made improvements to the land, nor made any sort of sacrifice or contribution to preserve or increase the value of the property.  Martha testified that there have been no improvements made to the property in the last fifty-two years.  The District Court found that the increase in value "has been due solely to real estate market forces." As such, Stephen is not entitled to a share of this appreciation merely by being a spouse to the property owner.

¶29    Moreover, the record shows Stephen's payment of property taxes was minimal.  In 2003, for instance, property taxes for the year were less than $50.  The task of the District Court was to determine the extent to which these payments facilitated the preservation or appreciation of the pre-acquired property. *In re Marriage of Herrera,* 2004 MT 40, ¶ 25, 320 Mont. 71, ¶ 25, 85 P.3d 781, ¶ 25.  Stephen's small monetary payments were paid from the parties' joint funds, and the District Court found that these payments were offset

---

[1]Testimony indicated that the property was worth little at the time the parties married, but was valued near $200,000 at the time of dissolution.  The District Court's finding simply indicated that the property "has dramatically increased in value" over the term of the marriage.

by Martha's contributions towards the retirement of debt owed against Stephen's pre-marital Washington property, and were inadequate to justify a division of the appreciated value of the Eureka property.

¶30 Upon review of the record, we conclude that the District Court's findings are supported by substantial evidence and are not clearly erroneous. We further conclude the District Court did not abuse its discretion by denying Stephen a share of the appreciated value of the Eureka property, Martha's pre-marital asset.

**¶31 Whether the District Court erred in ordering Stephen to pay an equalization payment of $54,232 to Martha, a sum that represented the entire difference between the values of assets awarded to Stephen and Martha from the marital estate.**

¶32 Stephen contends the District Court improperly calculated the property equalization payment when it ordered him to pay to Martha the full difference between the value of his and Martha's distributions. Stephen maintains the court clearly intended to award each party 50 percent of the marital estate and that the equalization payment should have been 50 percent of the difference between their shares, but that a math error caused Martha to be awarded a double equalization payment of $54,232. He contends that this error failed to equalize the estate and instead awarded Martha $54,232 more than he received. He contends the correct amount of the payment should be $27,116.

¶33 Martha maintains the District Court properly calculated the equalization payment based upon the values proved at trial. Moreover, Martha argues Stephen failed to request reconsideration of the decree to correct the alleged mistake pursuant to M. R. Civ. P. 60(b), and instead allowed the decree to be satisfied by failing to post a supersedeas

11

bond, thus forcing the District Court to deny the requested stay of equalization payment. Additionally, Martha asserts this issue is moot because on April 7, 2005, she caused the family home[2] to be sold to satisfy payment, and Stephen failed to intervene in the sale.

¶34 Our review of the record convinces us that the District Court intended to equalize the marital distribution, but in calculating the equalization payment, erroneously awarded Martha $27,116 *more* than necessary to equalize the distribution. We are thus left with the question of whether effective relief can be granted to Stephen following sale of the house and payment of the equalization obligation.

¶35 "In deciding whether a case is moot, we determine whether this Court can fashion effective relief." *Graveyard Creek Ranch, Inc. v. Bell*, 2005 MT 172, ¶ 12, 327 Mont. 491, ¶ 12, 116 P.3d 779, ¶ 12 (quoting *Turner v. Mountain Eng'g & Constr., Inc.,* 276 Mont. 55, 61, 915 P.2d 799, 803 (1996)). In *Turner,* the appellants allowed a foreclosure sale to proceed, did not stay the proceedings, and did not post a supersedeas bond. *Turner,* 276 Mont. at 63, 915 P.2d at 804. This Court held "[t]he appellants' status as lien creditors who did not post a supersedeas bond or stay the proceedings at the District Court pending appeal, along with the fact no surplus was recovered at the foreclosure sale, make it impossible for this Court to grant effective relief." *Turner,* 276 Mont. at 63, 915 P.2d at 804.

---

[2]Stephen was awarded the family home in the dissolution proceeding, but was ordered to execute and deliver to Martha's attorney a lien in favor of Martha on the property in the amount of $54,232. If Stephen failed to pay the sum of $54,232 to Martha by January 1, 2005, Martha was authorized to institute foreclosure proceedings on the property to collect the equalization payment.

¶36    *Turner* distinguished our holding in *Martin Dev. Co. v. Keeney Const. Co.*, 216 Mont. 212, 703 P.2d 143 (1985). In *Martin*, the appellant likewise had not posted a supersedeas bond, but instead paid the contested money judgment.  On appeal, the respondent argued that the payment had rendered the appeal moot. This Court disagreed, stating the case involved "a simple money judgment . . . . No [real] property changed hands pursuant to the judgment nor are there third party interests involved. There is no reason why this Court cannot grant effective relief."  *Martin,* 216 Mont. at 220, 703 P.2d at 148.  Thus, two factors, third party interests and the absence of property over which to grant relief, acted in *Turner* to place the matter beyond the effective reach of this Court. In contrast, those factors were not present in *Martin,* and, thus, we concluded that effective relief could still be granted, because third party interests would not be disturbed and only the return of money by the respondent was required.  *Martin*, 216 Mont. at 220, 703 P.2d at 128.  Similarly, in *Graveyard*, ¶ 13, we compared our holdings in *Turner* and *Martin* and concluded that the facts in *Graveyard* ("relevant property has changed hands and third-party interests, in fact multiple third-party interests, are involved," *Graveyard*, ¶ 14) were closer to *Turner* than to *Martin*, requiring a conclusion that the matter was moot.  *Graveyard*, ¶¶ 14-15.  We noted that the situation there did not permit us to "merely reverse the $ 500,000 money judgment below."  *Graveyard*, ¶ 15.

¶37    However, the case here is more like *Martin* than *Turner*.  Stephen was unable to stay the sale and subsequently failed to make the equalization payment by the time ordered.  This resulted in Martha conducting, and Stephen failing to intervene in, a

foreclosure proceeding to liquidate the home granted to Stephen, which resulted in payment of the equalization amount. Although the house itself has been sold and changed hands, perhaps to a third party, yet, unlike *Turner*, effective relief here only requires a return of excess proceeds which Martha received from the sale. No disruption of the possession of real property or to the interests of third parties is required. As in *Martin*, effective relief only requires correction of an error in the judgment—here, a judgment that divided the marital estate between the parties before the Court. Regardless of whether the property is in the form of cash or real estate, distribution of the marital estate as between the parties is before us and remains subject to this Court's order. Were we to affirm the District Court's order regarding the equalization payment, Martha would receive an inappropriate windfall of $27,116. Under these circumstances, we conclude that the appeal is not moot.

¶38 We conclude the District Court clearly intended to divide the marital estate equally, but made a miscalculation of the amount of the equalization payment. Therefore, the equalization payment of $54,232 is reversed and this matter is remanded for entry of an amended judgment ordering an equalization payment from Stephen in the amount of $27,116.

¶39 Affirmed in part, reversed in part and remanded for proceedings consistent with this Opinion.

/S/ JIM RICE

14

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER