FILED

03/31/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0262

DA 25-0262

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 69N

IN RE THE MARRIAGE OF:

HANNAH GALIA SNELSON,

       Petitioner and Appellee,

  and

DOMINGO BAEZ, JR.,

       Respondent and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DR 23-61
                Honorable Brett D. Linneweber, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Domingo Baez, Jr., Self-Represented, Billings, Montana

      For Appellee:

          Adrian M. Gosch, Gosch Law, PLLC, Billings, Montana

                      Submitted on Briefs:  March 11, 2026

                                 Decided:  March 31, 2026

Filed:

                         _____
                                    Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Domingo Baez, Jr., (Baez) appeals from the Findings of Fact, Conclusions of Law, Final Parenting Plan, Decree, and Order Amending Order of Protection entered March 7, 2025, by the Thirteenth Judicial District Court, Yellowstone County, pursuant to which the District Court adopted a final parenting plan that placed primary residential custody of the parties' minor child with Hannah Galia Snelson (Snelson) and granted Baez structured parenting time; and maintained a five-year order of protection, amending it to permit parenting exchanges and limited communications about the parties' child through a structured parenting application. He also appeals interlocutory and final orders.

**Background**

¶3 Snelson and Baez were married in February 2021 and separated in January 2022. They have one minor child, D.B., born in September 2022. In January 2023, Snelson initiated dissolution proceedings.

¶4 In the early stages of the case, the parties exercised an informal equal parenting arrangement. As disputes escalated, however, the District Court conducted a hearing in February 2024 and entered an Interim Parenting Plan (IPP) on March 11, 2024. The IPP reduced Baez's parenting time from an equal schedule to a defined weekly block and

2

required both parties to undergo updated evaluations, including mental health and chemical dependency assessments, as well as an anger management assessment for Baez.

¶5 The record reflects that the proceedings became increasingly contentious following entry of the IPP. In July 2024, Snelson sought, and the District Court issued, a temporary order of protection. After a hearing on August 7, 2024, the District Court entered a five-year order of protection (OOP), on August 12, 2024. The court found that Baez had engaged in conduct that placed Snelson in reasonable apprehension of bodily injury, had engaged in stalking behavior, and had caused Snelson substantial emotional distress. The OOP prohibited Baez from contacting Snelson and the parties' minor child, subject to modification through subsequent parenting orders. As a result, Snelson assumed primary care of the child beginning in July 2024. The OOP remained in place through the final parenting proceedings.

¶6 The case proceeded toward final hearing through a series of continuances and changes in representation. Baez retained counsel in August 2024, but the attorney-client relationship deteriorated in the months leading up to trial. In late November 2024, Baez filed motions seeking to terminate counsel, obtain return of his retainer, and continue the proceedings to secure new representation. His counsel moved to withdraw shortly before a scheduled December 3, 2024 hearing.

¶7 At the outset of that hearing, the District Court granted counsel's motion to withdraw, leaving Baez unrepresented. The court then addressed pending motions and scheduling issues. During the exchange, Baez repeatedly interrupted the court and disputed prior rulings. The court advised Baez that it had previously ruled on certain motions orally

and warned that continued interruptions would result in sanctions. The exchange escalated, with Baez continuing to interrupt and challenge the court's authority.

¶8    The District Court ultimately found Baez in contempt for disruptive conduct, ordered that he be remanded for a period of ten days, and terminated the hearing. Before adjourning, the court continued the dissolution trial and reset it for February 25-26, 2025, stating that no further continuances would be granted absent a verifiable emergency.

¶9    The matter proceeded to a non-jury trial on February 25, 2025. Both parties were present and represented by counsel. The District Court received testimony and evidence addressing the statutory best-interest factors, including the parties' mental health, prior substance use, parenting history, and the impact of the order of protection on the child's care and stability.

¶10    On March 7, 2025, the District Court entered detailed Findings of Fact and Conclusions of Law. The court found that the child had experienced continuity and stability in Snelson's care since entry of the temporary order of protection, and that Baez had a documented history of anger and controlling behavior that raised concerns for the child's welfare. The court further found that, although both parents were bonded with the child, several statutory factors—including stability of care, evidence of Baez's threatening conduct, and the need to maintain a safe environment—favored Snelson.

¶11    Based on these findings, the District Court adopted Snelson's proposed parenting plan. The final plan awarded her primary residential custody while providing Baez with regular parenting time from Tuesday evening to Thursday evening each week. The court maintained the existing OOP it had issued in July 2024 but amended it only as necessary

4

to permit parenting exchanges and limited communication regarding the child, directing the parties to communicate through a structured parenting application. The court otherwise maintained the protective restrictions of the OOP.

¶12 Baez thereafter filed a notice of appeal challenging the final parenting determination, the OOP, and numerous procedural rulings made during the course of the proceedings. He contends that the District Court's management of the case—particularly its handling of evidence, motions, and the OOP proceedings—deprived him of a meaningful opportunity to present his case and resulted in an incomplete and unfair record.

¶13 Baez raises four issues on appeal: (1) whether the District Court violated his due process rights; (2) whether it violated his equal protection rights; (3) whether it misapplied the best-interest factors under § 40-4-212, MCA; and (4) whether the court engaged in judicial misconduct.

¶14 Whether a district court violated a party's right to due process is a question of constitutional law, and we exercise plenary review. *In re L.V.-B.*, 2014 MT 13, ¶ 12, 373 Mont. 344, 317 P.3d 191. A district court's findings of fact are reviewed for clear error. *In re Parenting of P.H.R.*, 2021 MT 231, ¶ 7, 405 Mont. 334, 495 P.3d 38. Decisions based on findings that are not clearly erroneous are reviewed for abuse of discretion. *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49.

**1. The District Court Did Not Violate Baez's Right to Due Process**

¶15 Article II, Section 17, of the Montana Constitution and the Fourteenth Amendment of the United States Constitution guarantee due process. A parent's right to the care and custody of his or her child is a constitutionally protected liberty interest, and due process

requires notice and the opportunity to be heard before governmental deprivation of that interest. *In re Marriage of Sampley*, 2015 MT 121, ¶ 14, 379 Mont. 131, 347 P.3d 1281; *see also Byrd v. Columbia Falls Lions Club*, 183 Mont. 330, 332, 599 P.2d 366, 367 (1979); *In re Marriage of Robbins*, 219 Mont. 130, 138, 711 P.2d 1347, 1352 (1985). At the same time, due process does not entitle a party to present all evidence he wishes or limit a trial court's authority to manage proceedings and determine admissibility of evidence. *Stevenson v. Felco Indus.*, 2009 MT 299, ¶¶ 16, 32, 352 Mont. 303, 216 P.3d 763.

¶16 The record demonstrates that Baez had notice of the proceedings and multiple opportunities to be heard over the course of a lengthy dissolution action culminating in a full non-jury trial. Although Baez challenges the exclusion or treatment of certain filings and evidence, those challenges concern discretionary evidentiary rulings. Because evidentiary rulings are committed to the district court's discretion, disagreement with them does not establish a due process violation where the party has had a meaningful opportunity to be heard. *Stevenson*, ¶¶ 16, 32.

¶17 The December 3, 2024 hearing transcript further reflects that the District Court was required to manage repeated interruptions and disruptive conduct by Baez, ultimately holding him in contempt after warnings. Trial courts possess inherent authority to control courtroom proceedings and ensure orderly administration of justice. *Marez v. Marshall*, 2014 MT 333, ¶ 32, 377 Mont. 304, 340 P.3d 520. The exercise of that authority, including responding to disruptive conduct, does not violate due process where the party has been afforded notice and an opportunity to be heard.

¶18 Baez further contends that the District Court "manipulated" the record by striking or sealing filings and by relying on evidence outside the adversarial process. The record does not support that characterization. The procedural history reflects that the District Court ruled on numerous motions, including motions it deemed improper or untimely, and exercised its authority to manage filings and the admission of evidence. Although Baez asserts that certain materials were sealed or omitted, the record on appeal includes the District Court's orders, the admitted evidence, and the proceedings upon which the court based its findings. Baez has not demonstrated that the District Court relied on evidence outside the record or prevented him from presenting relevant evidence at the final hearing. Baez's argument instead reflects disagreement with the court's rulings regarding what evidence would be considered and how the record was developed.

¶19 Baez also asserts that the District Court relied on "undisclosed reports," including references to a standing master and a "McCann report," without affording him an opportunity to respond. The record does not support this assertion. The District Court's findings reflect reliance on the evidence presented during the proceedings, including testimony and evaluations obtained through the interim parenting process. Baez has not identified any report upon which the court relied that was not part of the proceedings or otherwise unavailable to him. His argument instead reflects disagreement with the court's consideration of the evidence before it, not the use of undisclosed materials.

¶20 Baez further asserts that the District Court excluded testimony from Dr. Mungadze regarding dissociative identity disorder and that evidence of a suicide attempt was contained in filings that were sealed and therefore not considered. The record does not

7

support a due process violation on this basis. The District Court conducted a final evidentiary hearing at which the parties were afforded the opportunity to present testimony and evidence relevant to the child's best interests. To the extent certain materials were not admitted or were subject to sealing, those determinations fall within the court's authority to manage the admissibility and confidentiality of evidence. Baez has not demonstrated that the District Court prevented him from presenting relevant evidence at the final hearing or that the court relied on an incomplete or improper evidentiary record in reaching its decision. The record does not support Baez's contention that the District Court violated his right to due process.

**2. The District Court Did Not Violate Baez's Right to Equal Protection**

¶21 Article II, Section 4, of the Montana Constitution and the Fourteenth Amendment of the United States Constitution provide the right to equal protection. Baez's equal protection claim likewise fails as a matter of settled law. Equal protection requires that similarly situated persons be treated alike. Mont. Const. art. II, § 4; *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, ¶¶ 15-19, 325 Mont. 148, 104 P.3d 445. Baez does not identify any similarly situated litigant who was treated differently. Rather, his argument challenges the District Court's evidentiary rulings, which are inherently discretionary and do not constitute unequal treatment absent proof of discriminatory application of the law.

**3. The District Court Did Not Misapply the Best-Interest Factors**

¶22 The District Court did not abuse its discretion in applying the best-interest factors under § 40-4-212, MCA. A district court has broad discretion in determining a parenting plan, and we will not disturb its decision absent a clear abuse of discretion if its findings

8

are supported by substantial evidence. *Oehlke*, ¶ 17. Baez asserts the District Court relied "on a manufactured seven-month Order of Protection vacuum to conclude [Snelson] parented 'without incident,' while disregarding medical evidence of the child's behavioral, medical and developmental deterioration, and continuity of care and continued negative police involvement including several concealed and undisclosed arrests." The record does not support this characterization. The order of protection was not an evidentiary substitute; it was itself the product of an evidentiary hearing at which the District Court made findings regarding Baez's conduct, including threats, stalking, and behavior causing emotional distress.

¶23 The District Court did not treat the order of protection as dispositive of the parenting determination. Rather, it considered the circumstances that led to the order, together with the child's stability and continuity of care following its issuance. The court found that since July 2024, the child had resided primarily with Snelson and had experienced stability in her care. Those findings relate directly to the statutory best-interest factors, including continuity and stability of care and the presence or threat of physical or emotional harm. *See* § 40-4-212(1)(d), (f), (h), MCA.

¶24 The record further reflects that the court maintained—not expanded—the order of protection when it adopted the final parenting plan and modified it only to accommodate parenting exchanges. The court's amendment of the order of protection to accommodate parenting exchanges undermines Baez's assertion that the District Court used the order as a mechanism to sever his parental rights. Instead, the court preserved Baez's parenting time while accounting for safety concerns identified through the protection proceedings.

¶25 On this record, the District Court's consideration of the order of protection and the circumstances underlying it was appropriate and consistent with its obligation to evaluate the child's best interests under § 40-4-212, MCA. The court entered detailed findings addressing the statutory best-interest factors, including continuity and stability of care, the parties' mental health, and evidence of threatening conduct that resulted in a five-year order of protection. Substantial evidence supports the District Court's findings that the child had experienced stability in Snelson's care since entry of the temporary order of protection and that Baez's conduct raised concerns regarding the child's safety and emotional wellbeing. Where substantial evidence supports the findings and the court has considered the statutory factors, we will not reweigh the evidence on appeal. *Oehlke*, ¶ 17.

¶26 Moreover, the parenting plan the District Court ordered did not infringe Baez's fundamental right to parent. While parents possess a fundamental liberty interest in the care and custody of their children, that interest is subject to the State's obligation to protect the child's best interests. *See Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). The parenting plan here preserves Baez's parental relationship by granting him ongoing parenting time, undermining his claim that the District Court improperly terminated his parenting rights.

**4. The District Court Did Not Engage in Judicial Misconduct**

¶27 Finally, Baez alleges that the District Court engaged in judicial misconduct and improper influence. His argument is not limited to claims of bias. Rather, he asserts that the court manipulated the record by striking or sealing filings, relied on undisclosed or improper evidence, improperly integrated the order of protection into the dissolution

10

proceeding, curtailed his ability to present evidence, and thereby predetermined the outcome of the parenting determination.

¶28 The record does not support these allegations. First, Baez's challenges to the court's handling of filings, evidence, and motions concern discretionary case management and evidentiary rulings. In family law cases, the district court is vested with broad discretion to evaluate the evidence, assess credibility, and manage the proceedings. *In re Marriage of Horton*, 2004 MT 353, ¶ 11, 324 Mont. 382, 102 P.3d 1276; *see also* M. R. Civ. P. 16; *Stevenson*, ¶ 32; *Fink v. Williams*, 2012 MT 304, ¶ 18, 367 Mont. 431, 291 P.3d 1140. The record reflects that the District Court conducted multiple hearings over an extended period, received evidence from both parties, and ultimately held a full non-jury trial before issuing detailed findings. Further, the record does not support the assertion that the District Court created a "manufactured" or one-sided record; rather, it reflects a contested proceeding in which the court resolved disputes over filings and evidence in the exercise of its discretion.

¶29 Second, Baez's assertion that the court relied on undisclosed or improper evidence is not borne out by the record. The District Court's findings reflect consideration of the evidence presented during the proceedings, including testimony and evaluations ordered during the interim parenting phase. Baez's argument instead reflects disagreement with the weight assigned to that evidence and the court's credibility determinations.

¶30 Third, as discussed above, the District Court did not misuse the order of protection to predetermine the parenting outcome. The order of protection was issued following a separate evidentiary hearing and was considered, along with the circumstances underlying

11

it, as part of the court's evaluation of the child's safety, stability, and best interests under § 40-4-212, MCA.

¶31 Fourth, the record does not support Baez's claim that he was denied a meaningful opportunity to be heard. The proceedings spanned more than two years and included multiple hearings and a final trial. While the December 3, 2024 hearing reflects that the District Court curtailed portions of the exchange due to Baez's repeated interruptions, the transcript demonstrates that the court's actions were directed at maintaining order in the proceeding, not suppressing relevant evidence.

¶32 Finally, Baez's allegations regarding counsel do not establish judicial misconduct. To the extent Baez challenges the performance or actions of his attorneys, those matters do not demonstrate that the District Court acted with bias or improper influence.

¶33 In evaluating a claim of judicial bias, the inquiry is whether the judge's impartiality might reasonably be questioned. *Reichert v. State*, 2012 MT 111, ¶ 50, 365 Mont. 92, 278 P.3d 455. There is a presumption of honesty and integrity in those serving as adjudicators, and absent evidence to the contrary, that presumption stands. *Reichert*, ¶¶ 39, 50-51.

¶34 Judicial misconduct requires a showing of bias, lack of impartiality, or improper influence. The record reflects no such showing here. Instead, it demonstrates that the District Court presided over related proceedings involving the same parties, managed a contentious case, ruled on disputed issues, and weighed conflicting evidence in reaching its decision. Baez's allegations, unsupported by evidence of bias, prejudice, or unethical

12

conduct, do not establish judicial misconduct. Baez has not met his burden of establishing judicial misconduct.

**Conclusion**

¶35 Having reviewed the briefs and the record on appeal, we conclude that Baez has not met his burden of persuasion. The District Court's findings of fact are not clearly erroneous, its conclusions of law are correct, and its parenting determination was not an abuse of discretion.

¶36 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions because it presents no constitutional issues requiring resolution beyond application of settled law, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶37 Affirmed.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE